# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

UNITED STATES OF AMERICA,

             Plaintiff,

vs.

JAIME LIMONES-VALLES,

             Defendant.

No. 16-CR-4060-LTS

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS INDICTMENT**

―――――――――――――

**I.   PROCEDURAL HISTORY** ......................................................................... 2

**II.   RELEVANT FACTS** ............................................................................... 3

  **A.  Criminal Conviction** ........................................................................ 3

  **B.  2001 Expedited Removal Proceedings** .................................................. 5

  **C.  2004 Expedited Reinstatement of Removal Proceedings** ........................... 7

**III.   APPLICABLE STANDARDS** .................................................................. 8

**IV.   ANALYSIS** ........................................................................................ 11

  **A.  Whether the Court can Consider Defects in Defendant's 2001 Removal** .......... 12

  **B.  Whether Defendant Meets the Test for Collateral Challenge** ..................... 14

    **1.  Exhaustion of Administrative Remedies** ......................................... 14

    **2.  Opportunity for Judicial Review** .................................................. 16

    **3.  Fundamental Unfairness** ........................................................... 17

      a.  Defendant's Prior Conviction ...................................................... 17

      b.  Due Process Violation Because of Expedited Removal ......................... 22

      c.  Prejudice ............................................................................... 24

**V.  CONCLUSION** ..................................................................................... 25

Before me is defendant's motion to dismiss the indictment. Doc. 12. A grand jury charged defendant with being an aggravated felon found after illegal reentry in the United States. In his motion to dismiss the indictment, defendant collaterally attacks the validity of the underlying removal orders that made his reentry into the United States a federal criminal offense. The Honorable Judge Leonard T. Strand referred this motion to me for a report and recommendation. For the reasons that follow, I respectfully recommend that the Court grant defendant's pending motion.

## I.    PROCEDURAL HISTORY

On July 20, 2016, a grand jury indicted defendant, charging him with a single count of being an aggravated felon found in the United States after illegal reentry, in violation of Title 8, United States Code, Section 1326(a) & (b)(2). Doc. 2. On August 28, 2016, defendant filed the instant motion to dismiss indictment. Doc. 12. On September 27, 2016, I held an evidentiary hearing on this motion. Defendant was personally present and aided by a live interpreter. Assistant Federal Public Defender Brad Hansen represented defendant. Assistant United States Attorney Kevin Fletcher represented the United States. Defendant testified, and I admitted defense exhibits A through E. The government called Retired Border Control Agents Ron Bastyr and Nick Schmidt, as well as Special Agent Steven Pryor, as live witnesses, and I admitted the government's exhibits 1 through 8. I ordered Exhibits 1 through 4 admitted under seal because of personal identifier information contained in the exhibits.

Defendant submitted a first supplemental brief on September 28, 2016. Doc. 28. On September 29, 2016, I held oral arguments on this motion. Defendant was personally present with Mr. Hansen. Mr. Fletcher was present. Defendant was aided by an interpreter. The parties were invited to submit additional briefing by October 7, 2016. Defendant filed a second supplemental brief. Doc. 31. The government filed a

supplemental brief, and an additional exhibit, labeled as exhibit 9.  Docs. 32 & 32-1.
Thus, the motion is now fully submitted and ready for a decision.

## II.     RELEVANT FACTS

In brief summary, defendant is a citizen of Mexico.  As a teenager, defendant
came with his family to the United States.  According to defendant, he arrived in the
United States in 1991.  Defendant contends he came to the United States with his mother
as a minor.  *See* Doc. 12-1 (defendant's affidavit).  Defendant states he returned to
Mexico to complete high school and returned[1] to the United States with his girlfriend,
Maria Hernandez.  *Id.*  Together they resided in Nobles County, Minnesota, and had two
children, both United States citizens.  *Id.*

### A. Criminal Conviction

In 2001, Nobles County, Minnesota authorities charged defendant with two counts
of aggravated forgery.  Pursuant to a plea agreement, the state dropped one count and
defendant pled guilty to one count of aggravated forgery.  The Order of the Fifth Judicial
District Court of Minnesota reads:

[T]he Court makes its following Findings of Fact:
***
4. That the Defendant has a criminal history score of zero.

5. That the presumed sentence is a stay of twelve months and one day.

Now, therefore,
IT IS THE SENTENCE OF LAW, and the Judgment of the Court, that as
a penalty for the offense of aggravated forgery – employment forms,
imposition of sentence shall be, and the same hereby is, stayed on the
following conditions:

---

[1] The record is unclear when defendant returned to the United States on this occasion.
Immigration records document that defendant returned in 1996, but defendant alleges that he
returned in 1995 while still a minor.

1. That the Defendant shall accept the supervision of a probation officer of the Rock/Nobles County Community Corrections office for a period of five years, during which time he shall have no law violations of a misdemeanor category, or greater.

2. That the Defendant shall pay a fine to the Court Administrator, Nobles County . . . for a total fine payment due of $540.00. Alternatively, the Defendant may perform 100 hours of community service work . . . .

Doc. 12-3, at 1-2.

The transcript of the sentencing hearing reflects some confusion regarding a plea agreement and a term of ninety days imprisonment. *See* Doc. 22-21, at 3. At the sentencing hearing, the judge said "[b]y reason of the plea agreement imposition of sentence will be, and the same hereby is, stayed on these conditions: you accept confinement in the Nobles County Jail for 90 days with credit for three days served." *Id.* Defendant, through an interpreter, expressed confusion regarding the ninety-day jail time. *Id.* at 4. Defendant's attorney stated "Your honor, I think [defendant's] confusion is that we had an agreement that all of the jail would be stayed as well as the stay of imposition." *Id.* The transcript then reflects the following dialogue:

THE COURT: Oh, the jail time is stayed?
[defense attorney]: Right.
THE COURT: So there is no jail time?
[defense attorney]: None, sir.
THE COURT: All right. That will be stricken in the sentence then.

Doc. 22-21, at 4-5. [2]

---

[2] At the oral arguments hearing on September 29, 2016, in response to my inquiry, both parties concurred that there were no apparent differences between the transcript of the sentencing hearing (Doc. 22-21) and the written order of judgment (Doc. 12-3). Where a conflict exists, the oral pronouncement governs. *See United States v. Foster,* 514 F.3d 821, 825 (8th Cir. 2008) ("Where an oral sentence and the written judgment conflict, the oral sentence controls."); *see also United States v. Johnson*, 719 F.3d 660, 672 (8th Cir. 2013) (same); and *United States v. Bertucci*, 794 F.3d 925, 930 (8th Cir. 2015) (same). I agree with the parties that there is no material difference between the oral sentence and written judgment in this case.

## B. 2001 Expedited Removal Proceedings

Later in the same year, defendant was removed by a predecessor agency to the United States Immigration and Customs Enforcement (ICE) in North Dakota.[3]  ICE classified defendant as an aggravated felon, and therefore, processed for expedited removal.  That proceeding does not involve a hearing before an immigration judge.  Although there is a reference in defendant's state criminal proceedings suggesting that he had contact with an immigration attorney (Doc. 22-19, at 3), there is nothing in the record before me that demonstrates that he had an immigration lawyer during the 2001 removal proceedings.

In connection with the 2001 removal proceedings, ICE Agent Ronald Bastyr presented defendant with a number of forms, all of which were written in English.  See Exhibits C, 1A, 1B, 1C, 1F.  Specifically, Agent Bastyr provided defendant with a Warning to Alien Ordered Removed or Deported.  Exhibit 1A.  This form advised defendant that he was deportable because he had "been convicted of a crime designated as an aggravated felony."  Agent Bastyr also provided defendant with a Notice of Custody Determination, which advised defendant that he was to be detained pending completion of removal proceedings.  Exhibit 1B.  It further advised him that he "may not request a review of this determination by an immigration judge because the Immigration and Nationality Act prohibits your release from custody."  Defendant signed the form on September 20, 2001, beneath a checked box that reflected acknowledgement of receipt of the notification.

Five days later, Agent Bastyr provided defendant with a Notice of Intent to Issue a Final Administrative Removal Order.  Exhibit 1F.  On page 1 of this form, it indicated

---

[3] The United States Department of Homeland Security (DHS) replaced the Immigration and Naturalization Service (INS).  ICE is an agency under DHS.

that defendant was convicted of aggravated forgery "for which the term of imprisonment imposed was twelve months and 1 day." The first page of the form also advised defendant of certain rights and responsibilities, including the right to "seek judicial review of any final administrative order." On page 2, in a box labeled "Certificate of Service," Agent Bastyr averred that he provided a copy of the notice to defendant. A box is checked under his signature, indicating "I explained and/or served this Notice of Intent to the alien in the _____ language." Agent Bastyr did not, however, fill in the blank before the word "language." The last section on page two is entitled: "I Do Not Wish to Contest or Request Withholding of Removal." Boxes were checked indicating that defendant admitted the allegations, that he is deportable, and "not eligible for any form of relief from removal." It further indicates that he waived his "right to rebut and contest the above charges and [his] right to file a petition for review of the Final Removal Order." The statement goes on to indicate that defendant did "not wish to request withholding or deferral of removal" and wished "to be removed to Mexico." Finally, the form provided that he waived "the 14 day period of execution of the Final Removal Order." Defendant signed this form on September 25, 2001, at 3:30 p.m.[4]

An Order of Removal was executed on September 25, 2001. Exhibit G. The order has two boxes for the official to check regarding the Petition for Review, one indicating the alien waived it, and the other indicating it was "reserved." Neither is checked. Defendant was removed from the United States the following day.

---

[4] During the hearing, it became evident that certain dates on the forms were seemingly inconsistent. For example, the Exhibit 1H would make it appear that the warrant for his removal was signed before defendant received notice. The order of removal, Exhibit 1G, has a date at the top of the form of September 20, 2001, but the signature is dated September 25, 2001, and the time indication is 3:00 p.m., which is before defendant signed the waiver. I found credible, however, the agents' explanations that the apparent date discrepancies in both the 2001 and 2004 forms was a product of the computer software programs the agents used to generate the forms, which resulted in the pre-population of dates on the forms which did not necessarily correspond to when the forms were actually executed. Accordingly, I put no weight in my analysis on the allegation of procedural error in the execution of the forms.

Agent Bastyr was proficient in Spanish and testified at the hearing that although he has no specific recall of defendant, it was his practice to speak Spanish with any aliens from Mexico, and therefore, would have spoken Spanish with defendant during the removal proceedings. Defendant testified at the hearing that no immigration official ever spoke Spanish to him. I found Agent Bastyr to be credible, and found defendant's claim that no immigration official spoke to him in Spanish to be incredible.

Agent Bastyr testified that when processing defendant for removal, he did not translate the above-referenced forms to defendant verbatim. Rather, he testified that he would have translated "the essence" of the forms to defendant. At the hearing, Agent Bastyr was unable to testify as to exactly what portions of the forms he translated for defendant. Agent Bastyr testified that he would not have necessarily translated that portion of Exhibit 1F that explained why defendant was considered an aggravated felon. In other words, Agent Bastyr would not have necessarily told defendant that defendant was subject to removal because defendant had been sentenced to a period of imprisonment of one year and a day. Given defendant's protest at his sentencing hearing to the court's mistaken pronouncement of a ninety-day jail term, it seems likely defendant would have again protested had Agent Bastyr told him that defendant had been sentenced to prison for more than a year. Finally, Agent Bastyr also testified that the blank in Exhibit 1F regarding the language he used was simply an oversight; he was certain that he would have spoken Spanish with defendant because he was from Mexico.[5]

### C. 2004 Expedited Reinstatement of Removal Proceedings

In 2004, authorities again found defendant in this United States, this time in Colorado. ICE authorities again removed him from the United States. ICE agents relied

---

[5] Defendant suggested during the hearing and in post-hearing briefing that the proximity of these proceedings to the events of 9/11 contributed to immigration officials depriving defendant of due process. Although the immigration authorities answered the call of duty in that emergency to work extended hours, I do not find there was any credible evidence that it adversely affected their conduct in this case.

on the 2001 removal order. Because defendant was previously removed as an aggravated felon, he again did not qualify for a removal hearing. In contrast to the 2001 removal proceedings, in 2004, the notice and waiver forms officials provided to defendant were in Spanish. *See* Exhibits 2C, 2E. At the hearing, Agent Pryor testified that although he did not have a specific recollection of defendant, it was his practice to speak Spanish with an alien from Mexico. Exhibit 2D, Notice of Intent/Decision to Reinstate Prior Order, indicates that Agent Pryor spoke Spanish with defendant. Defendant testified at the hearing that no immigration official spoke Spanish with him. Furthermore, defendant testified that he only remembered the immigration authorities telling him to "sign, sign, sign." Defendant also testified that the "s" at the end of his signatures on Exhibits 2C and 2E did not "look like" the way he writes an "s" and that the initials on Exhibit 2C did not look like the way he writes his initials. I found Agent Pryor's testimony that he spoke Spanish with defendant and that defendant signed and initialed the forms credible, and I found incredible defendant's testimony that no immigration official spoke Spanish to him. I also found incredible defendant's attempt to distance himself from his signatures and initials by claiming he did not make them.

Then in 2016, authorities again found defendant in the United States, this time in Iowa, resulting in the instant charges.

### III.    APPLICABLE STANDARDS

In *United States v. Mendoza-Lopez*, the United States Supreme Court held that the government cannot rely on a deportation order to support a Section 1326 conviction when "'fundamental procedural defects of the deportation hearing' deprived aliens of their 'rights to appeal.'" *United States v. Mendez-Morales*, 384 F.3d 927, 929 (8th Cir. 2004) (quoting *Mendoza-Lopez*, 481 U.S. 828, 841-42 (1987)). After the Supreme Court decision, Congress amended Section 1326. *Id.* The amended and current statute, 8 U.S.C. § 1326, provides:

**(d) Limitation on collateral attack on underlying deportation order**
In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that--
**(1)** the alien exhausted any administrative remedies that may have been available to seek relief against the order;
**(2)** the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
**(3)** the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The defendant bears the burden of proof.[6] *See United States v. Tamayo-Baez*, No. 14-CR-3055-LRR, 2015 WL 926066, at *2 (N.D. Iowa Mar. 4, 2015), *aff'd.* 820 F.3d 308 (8th Cir. 2016) (appeal for certiorari pending) ("Defendant bears the burden of proof when seeking to collaterally attack his prior deportation order") (citing *United States v. Martinez-Amaya*, 67 F.3d 678, 681 (8th Cir. 1995)). Also, the above test is conjunctive. *See Tamayo-Baez*, 2015 WL 926066 at *3 ("These 'requirements are conjunctive, and thus Defendant must establish all three in order to succeed in his challenge to his removal order.'") (quoting *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002)). Thus, defendant must prove all three prongs to prevent the government from relying on his underlying removal order as a basis for a Section 1326 conviction.

---

[6] Defendant states that the standard of proof is "by a preponderance of evidence" and cited *United States v. Martinez-Amaya*, 67 F.3d 678, 681-82 & n.5 (8th Cir. 1995) ("[W]e need not decide the standard of proof . . . the application of a 'preponderance of the evidence' standard of proof . . . seems appropriate to us, in light of the fact that a deportation proceeding is civil in nature."). Doc. 12-1, at 8. The government states that this is undecided in the Eighth Circuit. Doc. 22, at 13 ("What that burden must be in this Circuit appears to have not yet been determined, but the Third and Fourth Circuit Courts of Appeal have determined the burden under §1326(d) is by a preponderance of the evidence) (citing *Richardson v. United States*, 558 F.3d 216, 222 n.5 (3rd Cir. 2009) and *United States v. Martinez-Amaya*, 67 F.3d 678, 682 n.5 (4th Cir. 1995)). As the parties agree that preponderance of the evidence is the appropriate standard, that is the standard I applied in my analysis.

The Eighth Circuit Court of Appeals stated:

> Consistent with the limitations in § 1326(d), we construe *Mendoza–Lopez* as barring use of a prior deportation order in a § 1326 prosecution when "(1) an error in the deportation proceedings rendered the proceedings fundamentally unfair in violation of due process, *and* (2) the error functionally deprived the alien of the right to judicial review." *United States v. Torres–Sanchez,* 68 F.3d 227, 230 (8th Cir. 1995).

*Mendez-Morales*, 384 F.3d at 929. Furthermore, defendant must show actual prejudice. *See United States v. Perez-Ponce*, 62 F.3d 1120, 1122 (8th Cir. 1995) ("The law is clear that in order to succeed on a collateral challenge of a deportation order, a defendant must demonstrate, not only that the deportation hearing was so defective as to effectively foreclose his right to a direct judicial review of the deportation, but also that he suffered actual prejudice from those defects.") (internal citations omitted). In the Eighth Circuit, actual prejudice requires a showing of a "reasonable likelihood that but for the errors complained of the defendant would not have been deported." *Id.* (internal quotation marks and citations omitted).

On the other hand, there is a split among the circuits whether the burden remains on the government to demonstrate that any waiver of rights under the first two prongs of Section 1326(d) were made voluntarily and knowingly. *Compare United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003) (holding that alien bears the burden to show that his appeal waiver is not knowing and voluntary), *with United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012) (holding that government bears burden of showing voluntary and knowing waiver); *Narine v. Holder*, 559 F.3d 246, 249-50 (4th Cir. 2009) (same). It appears the Eighth Circuit Court of Appeals has not explicitly addressed this issue. As the defendant generally bears the burden of proving his prior removal hearing was defective, I find it appropriate to hold him to the burden of demonstrating that his waiver of rights were not voluntary and knowing. See *United States v. Sanchez*, No. 14051 (MJD/TNL), 2014 WL 3952367, at *3 (D. Minn. Aug. 13, 2014) (in collateral

attack on prior removal in Section 1326 prosecution, holding that defendant failed to carry burden of showing that his waiver of appeal rights was unknowing and involuntary).

## IV. ANALYSIS

The indictment charges defendant with being "found knowingly and unlawfully in the United States after having been previously removed from the United States to Mexico on or about August 10, 2004." It does not reference defendant's 2001 removal. Defendant asks this Court to dismiss the indictment against him, arguing that he meets all three prongs of Section 1326(d). Defendant argues that he exhausted his administrative remedies because none was practically available to him due to the expedited removal proceedings to which he was subject. Defendant argues that his waiver of his appeal rights were not made voluntarily and knowingly. Finally, defendant alleges the removal proceedings were fundamentally unfair because he had not committed an aggravated felony, and he was prejudiced by this error because he otherwise could have pursued voluntary departure from the country instead of removal. Defendant argues he meets the test as to both his 2001 and 2004 removal proceedings. Alternatively, defendant contends that defects in his 2001 removal tainted his 2004 removal proceedings.

The government maintains that it provided defendant with due process during the removal proceedings and that defendant voluntarily and knowingly waived his administrative and appeal rights. The government also argues the removal was not fundamentally unfair because defendant was convicted of an aggravated felony. In any event, the government argues that defendant cannot show he was prejudiced because whether he would be permitted voluntary departure is a discretionary function in which defendant has no property or liberty interest. Finally, the government maintains that the 2001 removal proceedings are not relevant because the government only referenced the 2004 removal in the indictment and, in any event, and defects in the 2001 removal proceedings were cured by the 2004 removal proceedings.

11

Before I analyze whether defendant satisfied his burden in proving all three prongs of Section 1326(d)'s test, as a preliminary matter, I will first determine whether the Court can consider defects in defendant's 2001 removal proceedings and whether, if there were defects, the 2004 removal proceeding cured them.

## A. Whether the Court can Consider Defects in Defendant's 2001 Removal

Defendant argues his 2001 removal involved fundamental procedural defects. He further argues, alternatively, that the defects in his 2001 removal proceedings tainted the 2004 removal proceedings given that the 2004 removal was a "mere reinstatement of his flawed 2001 removal." Doc. 31, at 7. On the other hand, the government argues that neither the 2001 nor the 2004 removal proceedings involved fundamental procedural defects. The government further argues that the 2001 and 2004 removal orders are separate, and thus, the validity of the 2004 order is independent from any possible defects in the 2001 order. Doc. 32. The government concedes, however, that "[t]he 2004 removal was a reinstatement of the aggravated felony removal of 2001." Doc. 32, at 8.

I find the decision in *United States v. Charleswell*, 456 F.3d 347 (3rd Cir. 2006), persuasive. In *Charleswell*, the court was dealing with a 1991 deportation order and a 2001 reinstatement of that order. 456 F.3d at 349-50. The indictment relied only on the 2001 reinstatement of deportation. The court found it had authority to consider defects in the 1991 proceeding and was not limited to the proceeding identified in the indictment. The court reasoned:

> The government argues that we lack jurisdiction to review the 1991 Deportation, signaling its belief that Charleswell's conviction is premised solely on the 2001 Reinstatement and, consequently, that Charleswell is precluded from a collateral challenge to the original 1991 Deportation. Reading the indictment, it might seem that the government is correct, as it invokes only the 2001 Reinstatement as the underlying "deportation order" required for a § 1326 charge. However, *Mendoza–Lopez* did not constrict collateral challenges in the way that the government advocates and we do not agree that, for purposes of a collateral challenge, we are limited to reviewing only the 2001 Reinstatement. Rather, under *Mendoza–Lopez*, an

alien may mount, and we must hear, a challenge to the validity of both a reinstatement order and the original deportation or removal order. *See generally United States v. Luna*, 436 F.3d 312 (1st Cir. 2006) (discussing, but not deciding, which of two deportation orders could act as a basis for an illegal re-entry indictment); *Ramirez–Molina v. Ziglar*, 436 F.3d 508 (5th Cir. 2006) (concluding that on direct appeal from a reinstatement order the court retained the power to hear constitutional and legal challenges to the underlying deportation order). To hold otherwise would allow the government to avoid the consequences of a fundamentally unfair underlying deportation or removal proceeding simply by deleting it from the indictment, in contravention of the teaching in *Mendoza–Lopez* that "where a determination made in an administrative proceeding is to play a *critical role* in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Mendoza–Lopez*, 481 U.S. at 837–38, 107 S. Ct. 2148 (first emphasis added). Reinstatement orders do not exist independent and separate from their prior orders of removal but are instead explicitly premised on the prior order. *See* 8 U.S.C. § 1231(a)(5); *Ramirez–Molina*, 436 F.3d at 514. Consequently, the prior order remains a critical element of the reinstatement and, more importantly, of the illegal re-entry charge where that charge is premised on the reinstatement. Thus, insofar as the underlying element of the § 1326 proceeding is the reinstatement order, an alien may attempt to collaterally challenge both the original deportation order and the reinstatement order.

*Charleswell*, 456 F.3d at 352.

Here, as in *Charleswell*, the 2004 removal order was predicated on the 2001 removal order. At the hearing, Agent Pryor, who processed defendant's 2004 removal, testified he consulted the 2001 removal order and from that concluded defendant was an aggravated felon and thus not entitled to a removal hearing before an IJ. *See* Doc. 12-5, at 3 (Warning to Alien Ordered Removed or Deported dated August 5, 2004, the box is checked that defendant is an aggravated felon). Therefore, "where either proceeding— the reinstatement or the original—is so procedurally flawed that it 'effectively eliminated the right of the alien to obtain judicial review,' [this Court] may invalidate the criminal charges stemming therefrom." *Charleswell*, 456 F.3d at 352.

Accordingly, I find that I can consider whether defendant's 2001 removal proceeding involved fundamental procedural defects, even though the government has

not specifically cited that removal as the basis for its charge. Further, I find that if defendant's 2001 removal proceeding involved fundamental procedural defects, his 2004 removal proceeding could not remove the effect of that defect even if that proceeding did not suffer from fundamental procedural defects.

## B. Whether Defendant Meets the Test for Collateral Challenge

I finally turn now to the question of whether defendant meets each of the three prongs for collateral relief from his prior removal orders. As noted previously, to demonstrate a due process violation, defendant must demonstrate: (1) he exhausted any administrative remedies that may have been available to seek relief against the removal order; (2) the deportation proceedings at which the removal order was issued improperly deprived defendant of the opportunity for judicial review; and (3) the entry of the removal order was fundamentally unfair. I will address each of these factors in turn.

### 1. Exhaustion of Administrative Remedies

Defendant argues that he exhausted his administrative remedies because there were functionally no administrative remedies available to him under the expedited removal proceedings. The government may institute expedited removal proceedings of aliens convicted of aggravated felonies. *See* 8 U.S.C. § 1228(a)(3)(A). During this process, the government must serve the alien with a Notice of Intent that advises him of the basis of the charges and informs him of the opportunity to rebut the charges within ten days. 8 C.F.R. § 238.1(b)(2)(i). The alien may submit a written response rebutting the allegations supporting the charge and/or request the opportunity to review the government's evidence, request withholding of removal, and/or request an extension of time. 8 C.F.R. § 238.1(c)(1). An alien who does not respond to the Notice of Intent fails to exhaust his administrative remedies. *See Gonzalez v. Chertoff*, 454 F.3d 813, 816 (8th Cir. 2006) (holding a defendant failed to exhaust administrative remedies when he did not respond to the notice). This exhaustion requirement "must be excused where

an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." *United States v. Ortiz*, 488 F.3d 717, 718 (4th Cir. 2012).

In this case, I find the government failed to carry its burden of demonstrating that defendant voluntarily and knowingly waived his administrative rights with regard to the 2001 removal proceedings. The evidence was uncontroverted that defendant did not speak English in 2001. Agent Bastyr had no specific recall of defendant or his removal proceedings. The evidence before me is that Agent Bastyr translated "the essence" of the notice and removal forms to defendant. The record does not reflect, however, precisely what Agent Bastyr considered to be of essence. Importantly, Agent Bastyr testified that he would not have necessarily translated that portion of the form that would have informed defendant that the reason he was being deported was because immigration officials believed he had received a sentence of one year and a day for aggravated forgery. Finally, it does not help the government that the certificate of service on the removal notice (Exhibit 1F) failed to explicitly indicate that Agent Bastyr spoke to defendant in Spanish. Nevertheless, I accept Agent Bastyr's explanation that this was merely an oversight. And, although I generally do not credit defendant's testimony that no immigration official ever spoke Spanish to him, defendant most certainly did not testify that the waiver portion of the form had been translated for him. *See United States v. Merino-Hernandez*, 46 F. Supp. 3d 602, 608 & n.8 (D. Md. 2014) (holding a waiver invalid when the only evidence the alien was advised of his rights in Spanish was a printed notation that it had been done).

Accordingly, I find defendant did not knowingly and voluntarily waive is right to administrative review because the record does not establish defendant was fully advised of his rights in Spanish. On the other hand, I find defendant voluntarily and knowingly waived his right to administrative remedies with regard to his 2004 removal proceedings. The key forms in that case were provided to him in Spanish. Moreover, I credit the agent's testimony that he explained the forms to defendant in Spanish. I also find it credible that defendant signed and initialed the forms after reading them in Spanish.

## 2. *Opportunity for Judicial Review*

To succeed on his collateral attack, defendant must show that an error in the deportation proceedings functioned to deprive him of his right to judicial review. *Mendez-Morales*, 384 F.3d at 929. Additionally, if an alien waived his right to appeal a removal order but did so either not intelligently nor voluntarily, then his waiver cannot bar a collateral attack on the underlying deportation order. *See Mendoza-Lopez*, 481 U.S. at 840 ("An alien validly waives his rights associated with a deportation proceeding only if he does so voluntarily and intelligently."). A valid waiver bars a defendant's collateral attack on his underlying deportation order.

The government argues that defendant received fundamentally fair removal proceedings in both 2001 and 2004, and that defendant failed to pursue the opportunity for judicial review. Doc. 22, at 17-20. The government states "Defendant had two opportunities (2001 and 2004) to appeal his 'aggravated felony' determination to the Eighth Circuit Court of Appeals, but did not do so." Doc. 22, at 17. Also, the government alleges that defendant had an immigration attorney who could have filed on his behalf. *See* Doc. 22-19, at 3 (hearing transcript of plea of guilty) ("Your Honor, the Defendant, obviously, is here illegally, and has no prior history that we can determine. [Defense counsel] informs me he has an immigration attorney that is trying to work through things with him to try to be here legally).

Quite apart from the language issue with regard to the 2001 removal proceedings, defendant argues that his alleged waivers of judicial review in both 2001 and 2004 were neither *knowing* nor *voluntary* as he was not informed of his eligibility concerning voluntary departure. Doc. 31, at 3. Defendant alleges he waived these rights "based on the erroneous belief in his lack of alternative options." Doc. 31, at 3 (quoting *United States v. Reyes*, 907 F. Supp. 2d 1068, 1079 (N.D. Cal. 2012)). He argues, in essence, that his waiver could not be valid unless he was advised of his right to voluntary departure. This Court has previously rejected such a requirement. *See United States v.*

*Tamayo-Baez*, No. 14-CR-3055-LRR, 2015 WL 926066, at *5 (N.D. Iowa Mar. 4, 2015) (holding proposition that the government has an obligation to inform aliens of eligibility for discretionary relief).

### 3. *Fundamental Unfairness*

Fundamental unfairness in removal proceedings exist when the removal proceeding violated due process and it resulted in prejudice. Defendant claims he was denied due process because he was wrongfully subjected to expedited removal proceedings on the mistaken belief that he had been convicted of an aggravated felony. He alleges this prejudiced him because, absent that mistake, he was reasonably likely to qualify for voluntary departure from the United States, which would not have resulted in an order of removal.

### a. Defendant's Prior Conviction

I find that defendant's 2001 conviction in Minnesota was not an aggravated felony under 8 U.S.C. § 1101 (a)(43)(R).

Section 1101(a)(43) reads:

A. The term 'aggravated felony' means—(R) an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year.
B. Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.

8 U.S.C. § 1101(a)(43)(A)-(B) (2016). The government argues defendant's conviction in 2001 was a suspended sentence of twelve months and one day. *See generally* Doc. 32. The government summarizes the Order by the Minnesota court as setting out a presumptive sentence of twelve months and one day and then staying the imposition of the sentence, which the government alleges equates to a "suspended" sentence under

federal law. The government argues as the "term of imprisonment" under Section 1101(43)(B) includes any sentence "regardless of any suspension of the imposition or execution," thus, defendant's 2001 conviction is an aggravated felony.

Meanwhile, defendant contends that under the unique sentencing regime of Minnesota, defendant never received a sentence. Doc. 28, at 2 ("[T]he actual sentence was a stay of imposition without any underlying prison sentence."). Defendant argues that the Minnesota trial court chose a "stay of imposition" instead of a "stay of execution." Thus, no prison sentence was pronounced under Minnesota sentencing guidelines. Overall, defendant alleges that a "stay of imposition" is not a suspended sentence under federal law; rather, it is more like a deferred judgment. *Id.*, at 3.

Defendant argues that Minnesota has two forms of "stays," namely, a stay of imposition and a stay of execution. Essentially, defendant argues that a stay of imposition is like a deferred judgment under federal law, while a stay of execution is like a suspended judgment. Here, the state court stayed imposition of the sentence, and therefore, defendant argues he did not receive any sentence. I find defendant to be correct. The relevant Minnesota Practice Series provides: "Either the imposition or the execution of the sentence may be stayed. When imposition is stayed, no sentence is pronounced[ft]; when execution is stayed, the sentence is imposed but the defendant is not required to serve it, subject to probationary conditions." 9 HENRY W. MCCARR & JACK S. NORDBY, MINN. PRAC., CRIMINAL LAW & PROCEDURE § 36:40 (4th ed.). The footnote reads: "If imposition for a felony . . . is stayed, the defendant is put on probation, discharge occurs without sentence, and the conviction becomes a misdemeanor." *Id.* *See also*, Minn. Stat. Ann. § 609.135.[7]

---

[7]     **Subdivision 1. Terms and conditions.** (a) Except when a sentence of life imprisonment is required by law, or when a mandatory minimum sentence is required by section 609.11, any court may stay imposition or execution of sentence and:
(1) may order intermediate sanctions without placing the defendant on probation; or

This conclusion is reflected in Minnesota decisions *State v. Peterson* and *State v. Beaty*.  In *Peterson*, the Court of Appeals of Minnesota found that the trial court had stayed imposition of a sentence when the trial court ordered a ten-year term of probation for a defendant who pled guilty to fourth-degree criminal sexual conduct.  *State v. Peterson*, No. C0-00-2111, 2001 WL 741637, at *1 (Minn. Ct. App. July 3, 2001).  On point, the appellate court stated that:

> [T]he Minnesota Sentencing Guidelines make clear that a stay of imposition of sentence cannot be considered a departure.  "When a stay of imposition is given, no sentence length is pronounced and the imposition of the sentence is stayed to some future date."  Minn. Sent. Guidelines cmt. II.C.04; *see also State v. Stafford,* 368 N.W.2d 364, 366 (Minn. App. 1985) (concluding that no sentence of imprisonment is imposed until a stay of imposition is vacated).  There will never be a sentence imposed upon appellant for the offense to which he pleaded guilty here, unless he violates the terms of his probation and the court decides to revoke probation and impose sentence.

*Id*. at *2.  Similarly, in *State v. Beaty*, the appellate court noted that the "court that vacated stay of imposition was the first court to actually sentence the appellant." *State v. Beaty*, 696 N.W.2d 406, 410 (Minn. Ct. App. May 24, 2005) (internal quotation marks and citation omitted).

The Eighth Circuit Court of Appeals' decision in *United States v. Johnson*, 43 F.3d 1211 (8th Cir. 1995), is also instructive.  In the context of a misdemeanor offense under Minnesota law, in *Johnson* the Eighth Circuit relevantly noted that Minnesota's sentencing scheme was "unique" and that a Minnesota sentencing court may "impose a

---

(2) may place the defendant on probation with or without supervision and on the terms the court prescribes . . . .

Minn. Stat. Ann. § 609.135 (2016).

term of probation along with staying imposition of sentence." *Johnson*, 43 F.3d at 1215 (internal citation omitted). I agree with the government that the facts of *Johnson* are distinguishable from this present matter, and even defendant admits the *Johnson* case is in a "different context." Docs. 22 & 28, at 3. Yet, the impression of the unique Minnesota sentencing scheme remains consistent.

The government relies on a number of cases, which I find distinguishable from the present facts. *See generally, United States v. Demirbas*, 331 F.3d 582 (8th Cir. 2003) (court found that a suspended sentence of at least one year imprisonment is an aggravated felony under Section 1101(a)(43)); *United States v. Tejeda-Perez*, 199 F.3d 981(8th Cir. 1999) (court found suspended sentences count for purposes of Section 1101(a)(43) as long as defendant receives a sentence of at least one year); and *United States v Ayala-Gomez*, 255 F.3d 1314 (11th Cir. 2001) (the formally imposed term of imprisonment governs, not the time a court actually orders defendant to serve). These cases were all decided in the context of suspended <u>executions</u> of pronounced sentences. Here, the Minnesota judge spoke only in terms of a "presumed sentence" and then suspended the <u>imposition</u> of any sentence.

The government also cites *United States v. Renteria-Aguilar*, Case No.: 15cr2399 BTM, 2016 WL 2931117 (S.D. Cal. May 19, 2016), for the proposition that though a state court may use the term "stayed," in federal terms this means the execution of a sentence was suspended for purposes of federal law. Again, this case is distinguishable. Here, the judge did not pronounce a sentence; he only referenced a presumed sentence and then stayed imposition of any sentence.

The government cites the Eleventh Circuit Court of Appeals case of *United States v. Guzman-Bera*, 216 F.3d 1019 (11th Cir. 2000), as being dissimilar to this case. Doc. 32, at 4. I find that *Guzman-Bera*, rather, is similar to this case and strongly supports defendant's reasoning. In *Guzman-Bera*, the issue is whether the "aggravated felony" enhancement, sixteen-level enhancement to his base offense level, was proper. Defendant was arrested in the United States in 1995 for third-degree grand theft, and a Florida court

found him guilty and sentenced him to a five-year term of probation (this was offense defined by the courts as the aggravated felony). A few months later, he was deported. Three years later, he was convicted in the United States, again, and sentenced to 18 months imprisonment for violating this probation. Ultimately, the Eleventh Circuit found that:

> "When a court does not order a period of incarceration and then suspend it, but instead imposes probation directly, the conviction is not an 'aggravated felony.'" *United States v. Banda-Zamora,* 178 F.3d 728, 730 (5th Cir. 1999). Applying this analysis to the instant case, defendant was not sentenced for his 1995 conviction until his violation of probation, which occurred only after he was deported and illegally reentered the United States. His sentence was not a substituted sentence, but an original sentence. Although his 1995 conviction may have become an aggravated felony after his reentry into the United States and he received the 18-month prison sentence, it was not one when he was deported and when he reentered the United States, and should not have been used for enhancement purposes under U.S.S.G. § 2L1.2(b)(1)(A). Accordingly, we vacate the judgment of the district court and remand for re-sentencing.

*Guzman-Bera*, 216 F.3d at 1021. This reasoning further supports my decision. Here, as in *Guzman-Bera*, the Minnesota court did not sentence defendant to a period of incarceration; rather, he was placed on probation. Only if he violated the terms of probation might the court impose the sentence, the imposition of which the court had stayed. This is also bolstered by the hearing transcript of the plea of guilty. *See* Doc. 22-19, at 2-3 (Defense counsel stated: "It's not anticipated he do any executed jail time, Your Honor. So there really isn't 90 days stayed at all. Strictly a stay of imposition and then the conditions set forth in I, I two, and I three.").

Thus, I find that the Minnesota trial court stayed imposition of a sentence for defendant's guilty plea for aggravated forgery and instead imposed a five-year term of probation. Defendant never received a sentence, either suspended or otherwise. Consequently, his conviction fails to meet the statutory definition under Section

111(a)(43)(R)(B) for a "term of imprisonment" for at least one year. Defendant's conviction, therefore, does not qualify as an aggravated felony.

b. <u>Due Process Violation Because of Expedited Removal</u>

To establish a due process violation, "a party must demonstrate a protected liberty or property interest." *Nativi-Gomez*, 344 F.3d at 808 (internal citation omitted). First, defendant states the misclassification as an aggravated felon improperly denied him a removal hearing before an immigration judge (IJ) in 2001. Doc. 12-1, at 4. Defendant further alleges that given that he met the statutory requirements for voluntary departure, the IJ would likely have granted voluntary departure.[8] Doc. 31, at 2. Thus, in 2004, the process would have been different as defendant would have been entitled to a removal hearing before an IJ, and he would not have had the status of aggravated felon. Therefore, the government's reliance on the 2004 removal order to prove defendant is an aggravated felon found after reentry in the instant offense does not cure the fundamental procedural defect involved in defendant's 2001 removal proceeding.

The government argues that even if immigration authorities properly classified defendant as an aggravated felon, defendant cannot show actual prejudice as defendant has no protected interest in discretionary relief from removal, namely voluntary departure. Doc. 32. The government cites the following cases for its position that an alien cannot have a protected interest in discretionary relief: *see Jaimeson v. Gonzalez*, 424 F.3d 765, 768 (8th Cir. 2005) (Jamaican citizen appealing the decision of the Board of Immigration Appeals on the issue of discretionary relief of adjustment of status; court stated "[b]ecause [alien] is seeking the discretionary relief of adjustment of status, there

---

[8] At the evidentiary hearing, agents testified that an order of voluntary departure is not a formal court order of removal and may allow an alien to avoid some of the consequences associated with a formal order of removal. *See* 8 U.S.C. § 1229c (defining eligibility and terms for voluntary departure); *see also* 8 C.F.R. § 1240.26 (2016) (agency regulations).

is no constitutionally-protected liberty interest at stake."); *Etchu-Njang v. Gonzales*, 403 F.3d 577, 585 (8th Cir. 2005) (Cameron citizen alleging her counsel was ineffective at developing her claim to seeking the discretionary relief of cancellation of removal, and court stated discretionary relief is a "power to dispense a mercy" so an alien has no constitutionally protected liberty interest in it); *Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 809 (8th Cir. 2003) (again ineffective assistance of counsel claim pertaining to discretionary relief of adjustment of status); and *Garcia-Mateo v. Keisler*, 503 F.3d 698, 700 (8th Cir. 2007) (alien wanted to reopen her removal hearing as IJ failed to explain the availability of post-conclusional voluntary departure).

These cases are, however, distinguishable. In each of these cases, the defendants had at least a removal hearing before an IJ, and appealed to federal court. Here, defendant never got even half that far. His alleged due process violation is more severe. The issue in this case is not whether the IJ should have explained to him the differences between pre-conclusional voluntary departure or post-conclusional voluntary departure (*see Garcia-Mateo*), but rather whether defendant was entitled to a removal hearing before an IJ.

Defendant cites *United States v. Reyes*, 907 F. Supp. 2d 1068 (N.D. Cal. 2012) as persuasive authority. In *Reyes*, defendant was convicted of possessing a short-barrel shotgun in violation of California law and sentenced to sixteen months imprisonment. *Id.* at 1070. DHS determined that this conviction fell under Section 1101(a)(43)(F) as a "crime of violence" which is an aggravated felony. *Id.* at 1070-73. In short, the district court found that defendant's conviction did not constitute an aggravated felony under Section 1101(a)(43)(F), and thus, "his expedited removal and the denial of a hearing before an IJ (and the rights and advisement he should have received) was in error." *Id.* at 1077. Furthermore, the "failure to provide Defendant an opportunity to be heard by an IJ . . . denied him his due process rights." *Id.* This is similar to the case here. Although defendant does not have a constitutionally protected interest in obtaining voluntary departure as it is a discretionary form of relief, he was entitled to have an

opportunity to be heard by an IJ as a non-aggravated felon. As he was improperly deemed to be an aggravated felon, and placed in an expedited proceeding, he was denied of the opportunity to be heard by an IJ twice, once in 2001 and again in 2004. Therefore, this error was a violation of defendant's due process rights.

### c. Prejudice

To prove that an error made the proceedings fundamentally unfair, defendant must show that the error resulted in actual prejudice. *United States Rodriguez*, 420 F.3d 831, 834 (8th Cir. 2005) (citing *United States v. Torres-Sanchez*, 68 F.3d 227, 229 (8th Cir. 1995)). Actual prejudice "exists where defects in the deportation proceedings 'may well have resulted in a deportation that would not otherwise have occurred.'" *Rodriguez*, 420 F.3d at 834 (quoting *United States v. Santos-Vanegas*, 878 F.2d 247, 251 (8th Cir. 1989)). In other words, defendant must show that there was "'a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *Mendez-Morales*, 384 F.3d at 932 (quoting *Perez-Ponce*, 62 F.3d at 1122).

Defendant argues that he would have "satisfied the statutory requirements for voluntary departure because (1) he did not have an aggravated felony or terrorism-related conviction, and (2) he was not previously granted a voluntary departure, and (3) he could pay for his travel to his home country . . . . From there, an immigration judge likely would have exercised discretion to grant a voluntary departure because (1) his criminal history was limited to his 2001 aggravated forgery conviction . . . (2) he arrived to the United States at age 14 and lived continuously in this country for more than five years before his removal . . . (3) he had a respectable work history, paid taxes, and supported his family . . . and (4) he had numerous family members in the United States . . . ." Doc. 31, at 2-3 (defendant's second supplemental brief) (citing 8 U.S.C. § 1229c).

Defendant had never been granted voluntary departure before. I find a reasonable likelihood defendant would have met the statutory requirements for voluntary departure such that when the government denied him the opportunity to apply for voluntary

departure because it mistaken labeled him an aggravated felon, it prejudiced defendant. Ultimately, such a decision would have been in the sole discretion of the IJ. Nevertheless, I find there is a "reasonable likelihood" that an IJ would have granted voluntary departure in 2001 had immigration authorities not erroneously labeled defendant an aggravated felon. As voluntary departure is not a formal order of removal, defendant's proceeding in 2004 would have been different as well. He would have at least had the opportunity to be heard by an IJ in 2004. Thus, I find defendant suffered actual prejudice by the errors in his 2001 and 2004 removal order.

## V.     *CONCLUSION*

In summary, in 2001 immigration authorities understandably, but mistakenly, concluded defendant was an aggravated felon because they believed he was sentenced to term of imprisonment exceeding one year. Immigration authorities then subjected defendant to an expedited removal proceeding where they used forms written only in English, and for which the record is insufficient to find that they translated the forms sufficiently for defendant to knowingly waive his administrative or appellate rights. Given defendant's history at the time, I find there was a reasonable likelihood that, had immigration authorities processed him in the usual manner and given him an opportunity to appear before an IJ, he would have been eligible for voluntary departure. Absent his 2001 removal, he would not have been subject to the expedited reinstitution of removal in 2004. Absent those removals, defendant's reappearing in the United States in 2016 would not constitute a felony violation of Title 8, United States Code, Section 1326(a). For those reasons, I respectfully recommend the Court grant defendant's motion to dismiss the indictment in this matter (Doc. 12).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of

the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).


**IT IS SO ORDERED.**

**DATED t**his 19th day of October, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa