**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR16-4060-LTS |
| vs. | **ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| JAIME LIMONES-VALLES, | |
| Defendant. | |

---

## I.    INTRODUCTION

This matter is before me on a Report and Recommendation (R&R) filed by the Honorable C.J. Williams, United States Magistrate Judge, in which Judge Williams recommends that I grant defendant's motion (Doc. No. 12) to dismiss the indictment. Doc. No. 33.   The Government filed an objection (Doc. No. 44) and defendant filed a response (Doc. No. 47).   The matter is fully submitted.[1]

## II.    PROCEDURAL HISTORY

On July 20, 2016, the Grand Jury returned an indictment against defendant Jaime Limones-Valles, charging him with illegal reentry by an aggravated felon.   Doc. No. 2. Defendant filed his motion to dismiss the indictment on August 28, 2016.   On September

---

[1] The Government has filed a request to add Government's Exhibit 9 (a presentence report, Doc. No. 32-1), which was filed after Judge Williams' hearing, to the record.   Exhibit 9 is referenced in the R&R.   The Government's request is granted, and Exhibit 9 will be considered a part of the record.   The Clerk shall place Doc. No. 32-1 under seal.

27 and September 30, 2016, Judge Williams held a hearing on the motion. Doc. Nos. 23, 29. Judge Williams filed his R&R on October 19, 2016.

## III. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge

to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV.    THE R&R

### A.    Findings of Fact

After a *de novo* review of the record, including the transcript of the hearing (Doc. No. 48) and the parties' exhibits (Doc. Nos. 12-2 to 12-6 and 22-1 to 22-22), I adopt the findings of fact set forth in the R&R.    *See* Doc. No. 33 at 3-8.    In short, Limones-Valles is a citizen of Mexico who entered the United States unlawfully as a teenager.    He ultimately settled in Nobles County, Minnesota, where he lived with his wife and two children.    In 2001, Minnesota authorities charged Limones-Valles with two counts of aggravated forgery.    Pursuant to a plea agreement, one count was dropped and Limones-Valles pleaded guilty to the other count.

In its judgment, the Minnesota court noted that "the presumed sentence" would be "twelve months and one day."    However, the court "stayed" imposition of judgment on condition that Limones-Valles "accept the supervision of a probation officer" for five years, avoid additional law violations and either pay a fine or perform 100 hours of community service work.    Doc. No. 12-3 at 1-2.    During the sentencing hearing, the court initially expressed a belief that the plea agreement called for a sentence of 90 days in jail.    However, upon being advised that the parties had agreed to "no jail time," the court stated that this provision "will be stricken in the sentence then."    Doc. No. 22-21 at 4-5.    And, in fact, the written order of judgment makes no reference to a 90-day term of incarceration.

Shortly after being sentenced, Limones-Valles was deported by Immigration and Naturalization Services (INS)[2] in an expedited manner pursuant to statutes applicable when an unregistered alien is convicted of an aggravated felony. As set out by Judge Williams, there is ambiguity in the record regarding the quality of the information Limones-Valles received during the removal process. Specifically, there is no evidence to suggest he was informed in Spanish that the reason for the expedited removal was that he had (allegedly) been sentenced to more than a year in jail.

Limones-Valles returned to the United States at some point prior to 2004 and moved to Colorado. A Fort Collins, Colorado, police officer encountered Limones-Valles during a roadside stop on July 22, 2004. Limones-Valles provided his real name and the officer identified him as an alien who had previously been deported. Limones-Valles was arrested and ICE began removal proceedings. Authorities used more-standardized removal procedures during the 2004 removal, including communicating with Limones-Valles in Spanish.[3] Limones-Valles was then removed from the country for a second time.

At some point after 2004, Limones-Valles again returned to the United States. He was arrested in Iowa in 2016 and has been charged him with illegal reentry by an aggravated felon.

## B. *Defendant's Argument*

In moving to dismiss the indictment, Limones-Valles argues:

Mr. Limones-Valles's two removals from the United States were predicated on immigration authorities' erroneous conclusion that he had an aggravated

---

[2] INS is the predecessor agency to United States Immigration and Customs Enforcement (ICE).

[3] Limones-Valles testified that he was not addressed in Spanish and denied that he had initialed and signed certain documents. Judge Williams found this testimony to be incredible. Doc. No. 33 at 8. Based on my *de novo* review, I agree.

> felony conviction. As a result of that error, Mr. Limones-Valles suffered
> a due process violation – one that is perpetuated by the instant prosecution.
> The indictment must be dismissed.

Doc. No. 12-1 at 1-2. Specifically, Limones-Valles argues that because the imposition of judgment for his Minnesota conviction was "stayed," he was never convicted of an "aggravated felony" and should have had the opportunity to voluntarily remove himself before compulsory removal occurred. He further argues that because the initial removal was faulty, so too was the subsequent removal in 2004, and that a conviction for illegal reentry by a deported alien would violate his due process rights pursuant to *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). According, Limones-Valles argues that the indictment must be dismissed.

## C.    *Applicable Standards*

Judge Williams correctly described the applicable legal framework. Doc. No. 33 at 8-11. In *Mendoza-Lopez*, the Supreme Court held that due process considerations prohibit the conviction of a previously-deported alien for illegal reentry if the deportation proceedings were fundamentally unfair and there was no meaningful opportunity for review. *Mendoza-Lopez*, 481 U.S. at 841. Congress then codified the standard:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that-- (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "The defendant must meet all three requirements in order to successfully collaterally attack the prior removal order." *United States v. Tamayo-Baez*, 820 F.3d 308, 313 (8th Cir. 2016). Put another way:

> Consistent with the limitations in § 1326(d), we construe *Mendoza–Lopez* as barring use of a prior deportation order in a § 1326 prosecution when "(1) an error in the deportation proceedings rendered the proceedings fundamentally unfair in violation of due process, and (2) the error functionally deprived the alien of the right to judicial review." *United States v. Torres–Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995).

*United States v. Mendez-Morales*, 384 F.3d 927, 929 (8th Cir. 2004).   Additionally,

> "An error cannot render the proceedings fundamentally unfair unless it resulted in actual prejudice. . ."  "Prejudice in this context means 'a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'"

*United States v. Avila*, 522 F. App'x 369, 371 (8th Cir. 2013) (unpublished) *citing United States v. Rodriguez*, 420 F.3d 831, 834 (8th Cir. 2005) and *Mendez-Morales*, 384 F.3d at 931-32. "When the defendant satisfies all of § 1326(d)'s requirements, the district court must dismiss the illegal reentry charge." *United States v. Lopez–Collazo*, 824 F.3d 453, 458 (4th Cir. 2016)

## D.    *Judge Williams' Findings*

Judge Williams noted that the Eighth Circuit has not yet determined which party has the burden of showing that a defendant's waiver of rights was voluntary.  Judge Williams concluded that because a defendant generally has the burden of proving defects in his removal, the defendant also has the burden of showing the waiver was not voluntary.  Doc. No. 33 at 10 (citing *United States v. Sanchez*, No. Cr. 14-51, 2014 WL 3952367, at *3 (D. Minn. Aug. 13, 2014)).  I agree.  Accordingly, the burden is on the defendant, in all aspects, to show that his previous removals violated his due process rights and, therefore, that the present indictment should be dismissed.[4]

---

[4] Judge Williams subsequently made reference to the question of whether the Government met its burden of showing voluntariness.  Doc. No. 33 at 15.  However, I find that the defendant

Judge Williams then turned to defendant's argument that his 2001 removal is relevant to the present inquiry. The Government argues that because only the 2004 removal is cited in the indictment, the indictment is proper even if the 2001 removal was constitutionally deficient. Judge Williams found that because the 2001 removal gave rise to the 2004 removal, he should consider both. In reaching this conclusion, Judge Williams cited *United States v. Charleswell*, 456 F.3d 347 (3d Cir. 2006). In that case, the Third Circuit stated:

> The government argues that we lack jurisdiction to review the 1991 Deportation, signaling its belief that Charleswell's conviction is premised solely on the 2001 Reinstatement and, consequently, that Charleswell is precluded from a collateral challenge to the original 1991 Deportation. Reading the indictment, it might seem that the government is correct, as it invokes only the 2001 Reinstatement as the underlying "deportation order" required for a § 1326 charge. However, *Mendoza–Lopez* did not constrict collateral challenges in the way that the government advocates and we do not agree that, for purposes of a collateral challenge, we are limited to reviewing only the 2001 Reinstatement. Rather, under *Mendoza–Lopez*, an alien may mount, and we must hear, a challenge to the validity of both a reinstatement order and the original deportation or removal order. See generally *United States v. Luna*, 436 F.3d 312 (1st Cir. 2006) (discussing, but not deciding, which of two deportation orders could act as a basis for an illegal re-entry indictment); *Ramirez–Molina v. Ziglar*, 436 F.3d 508 (5th Cir. 2006) (concluding that on direct appeal from a reinstatement order the court retained the power to hear constitutional and legal challenges to the underlying deportation order). To hold otherwise would allow the government to avoid the consequences of a fundamentally unfair underlying deportation or removal proceeding simply by deleting it from the indictment, in contravention of the teaching in *Mendoza–Lopez* that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *Mendoza–Lopez*, 481 U.S. at 837–38, 107 S. Ct. 2148 (first emphasis added). Reinstatement orders do not exist independent and separate from their prior orders of removal but are instead explicitly premised on the prior order. See 8 U.S.C.

has the burden in this case and will conduct my *de novo* review accordingly.

§ 1231(a)(5); Ramirez–Molina, 436 F.3d at 514. Consequently, the prior order remains a critical element of the reinstatement and, more importantly, of the illegal re-entry charge where that charge is premised on the reinstatement. Thus, insofar as the underlying element of the § 1326 proceeding is the reinstatement order, an alien may attempt to collaterally challenge both the original deportation order and the reinstatement order. And, where either proceeding—the reinstatement or the original—is so procedurally flawed that it "effectively eliminated the right of the alien to obtain judicial review," we may invalidate the criminal charges stemming therefrom. *See Mendoza–Lopez*, at 839, 107 S. Ct. 2148.

*United States v. Charleswell*, 456 F.3d 347, 351–52 (3d Cir. 2006).[5]

Judge Williams then assessed Limones-Valles' argument that the 2001 removal was defective under the standards articulated above:

As noted previously, to demonstrate a due process violation, defendant must demonstrate: (1) he exhausted any administrative remedies that may have been available to seek relief against the removal order; (2) the deportation proceedings at which the removal order was issued improperly deprived defendant of the opportunity for judicial review; and (3) the entry of the removal order was fundamentally unfair. I will address each of these factors in turn. . .

Doc. No. 33 at 14. Regarding the first factor, Judge Williams stated:

I find defendant did not knowingly and voluntarily waive his right to administrative review because the record does not establish defendant was fully advised of his rights in Spanish. On the other hand, I find defendant voluntarily and knowingly waived his right to administrative remedies with regard to his 2004 removal proceedings. The key forms in that case were provided to him in Spanish. Moreover, I credit the agent's testimony that he explained the forms to defendant in Spanish. I also find it credible that

---

[5] The Ninth Circuit has reached the same conclusion. *See United States v. Arias-Ordonez*, 597 F.3d 972, 981 (9th Cir. 2010), stating, "[t]he district court correctly and succinctly assessed the situation when it said that the government could not launder the tainted removal by reinstating it. *Mendoza–Lopez* and *Morales–Izquierdo* compel us to hold that a valid reinstatement of an invalid removal order cannot transform the prior order into a valid predicate for an illegal reentry conviction."

defendant signed and initialed the forms after reading them in Spanish. . .

Doc. No. 33 at 15.

Regarding, the second factor, judicial review, Judge Williams did not make a particularized finding. However, Judge Williams later noted:

> [Limones-Valles] was entitled to have an opportunity to be heard by an IJ [immigration judge] as a non-aggravated felon. As he was improperly deemed to be an aggravated felon, and placed in an expedited proceeding, he was denied of the opportunity to be heard by an IJ twice, once in 2001 and again in 2004.

Doc. No. 33 at 23-24. Moreover, because Judge Williams ultimately concluded that Limones-Valles is entitled to have the indictment dismissed, he necessarily found that Limones-Valles was denied the opportunity for judicial review.

Regarding the third factor, Judge Williams found both a fundamental procedural defect (Limones-Valles' conviction was not an aggravated felon and he should not have been subject to expedited removal) and that the removal resulted in actual prejudice (it is more likely than not that Limones-Valles would have qualified for voluntary removal). Judge Williams concluded as follows:

> [I]n 2001 immigration authorities understandably, but mistakenly, concluded defendant was an aggravated felon because they believed he was sentenced to term of imprisonment exceeding one year. Immigration authorities then subjected defendant to an expedited removal proceeding where they used forms written only in English, and for which the record is insufficient to find that they translated the forms sufficiently for defendant to knowingly waive his administrative or appellate rights. Given defendant's history at the time, I find there was a reasonable likelihood that, had immigration authorities processed him in the usual manner and given him an opportunity to appear before an IJ, he would have been eligible for voluntary departure. Absent his 2001 removal, he would not have been subject to the expedited reinstitution of removal in 2004. Absent those removals, defendant's reappearing in the United States in 2016 would not constitute a felony violation of Title 8, United States Code, Section 1326(a). For those reasons, I respectfully recommend the Court grant defendant's

motion to dismiss the indictment in this matter (Doc. 12).

Doc. No. 33 at 25.

## V.    THE OBJECTION

The Government filed a timely objection (Doc. No. 44) to the R&R and advances two arguments.   First, the Government argues that the 2001 removal cannot taint the 2004 removal and that Judge Williams should have applied the three factor test to the 2004 removal.   Second, the Government argues that Limones-Valles did not meet the criteria for voluntary departure:

> Voluntary departure is permitted if the alien has been a person of good moral character for at least 5 years. 8 U.S.C. § 1229c(b)(1)(B).   A person does not have good moral character if he is described in 8 U.S.C. § 1182(a)(2), subparagraphs A and B.  8 U.S.C. § 1101(f)(3). 8 U.S.C. § 1182(a)(2)(A)(i)(I) uses the term "crime involving moral turpitude." "Crimes involving the intent to deceive or defraud are generally considered to involve moral turpitude. ...   And because fraud may be inferred from conduct, the likely effect of which would be to mislead or conceal, courts have held that intentionally concealing criminal behavior involved moral turpitude." *Villatoro v. Holder*, 760 F.3d 872, 878 (8th Cir. 2014). . .

Doc. No. 44 at 10.   Accordingly:

> Because defendant's crime involved moral turpitude and the statutory exception did not apply, defendant would not have been statutorily eligible for voluntary departure under § 1229c(b)(1)(B), either in 2001 or 2004. He therefore cannot establish the prejudice requirement under 8 U.S.C. § 1326(d)(3).

Doc. No. 44 at 11.

In his response (Doc. No. 45), Limones-Valles contends Judge Williams was correct in finding that the failings during the 2001 removal tainted the 2004 removal. He further argues that the good moral character requirement would not have applied to the type of voluntary removal he would have sought.   Accordingly, he maintains that but

10

for the alleged errors discussed above, he would have been eligible to voluntarily remove himself from this country.

## VI. ANALYSIS

Before applying the three factor test set out above, I will address three issues that are key to the resolution of defendant's motion. First, was Limones-Valles convicted of an aggravated felony? Second, would Limones-Valles have been eligible for voluntary removal absent the conviction for the aggravated felony? Third, did the 2004 removal proceedings cure deficiencies that occurred during the prior removal?

### A. *Relevant Legal Issues*

#### 1. *Was Limones-Valles an Aggravated Felon?*

An "aggravated felony" is "an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the *term of imprisonment is at least one year*." 8 U.S.C. § 1101 (a)(43)(R) (emphasis added). Thus, "[a]n 'aggravated felony' under the statute is defined in terms of the sentence, not the criminal acts involved in the conviction, nor in terms of the conviction itself." *United States v. Guzman-Bera*, 216 F.3d 1019, 1020 (11th Cir. 2000). Judge Williams concluded that Limones-Valles was not an aggravated felon because he was not subjected to a sentence of a year or more of confinement.

There is no dispute that Limones-Valles was charged with forgery and *could* have been sentenced to at least one year in prison. However, the state court "stayed" imposition of that sentence. This raises the question of what a "stayed" imposition means under Minnesota law. The Minnesota Court of Appeals has explained:

> [T]he Minnesota Sentencing Guidelines make clear that a stay of imposition of sentence cannot be considered a departure. "When a stay of imposition is given, no sentence length is pronounced and the imposition of the

sentence is stayed to some future date." Minn. Sent. Guidelines cmt. II.C.04; *see also State v. Stafford*, 368 N.W.2d 364, 366 (Minn. App. 1985) (concluding that no sentence of imprisonment is imposed until a stay of imposition is vacated). There will never be a sentence imposed upon appellant for the offense to which he pleaded guilty here, unless he violates the terms of his probation and the court decides to revoke probation and impose sentence.

*State v. Peterson*, No. CO-00-2111, 2001 WL 741637, at *2 (Minn. Ct. App. July 3, 2001) (unpublished). As stated in *Stafford*,

The supreme court has held that when the court chooses to grant a stay by means of stay of execution, the defendant is subject to and under a sentence of imprisonment for the purposes of Minn. Stat. § 609.15, subd. 1. *Moffitt v. State*, 304 N.W.2d 31 (Minn. 1981). A stay of imposition, however, is fundamentally different. Until the stay is vacated, and sentence imposed, there is no sentence of imprisonment.

*Stafford*, 368 N.W.2d at 366 (emphasis added); *see also State v. Beaty*, 696 N.W.2d 406, 410 (Minn. Ct. App. May 24, 2005) (finding that the court that vacates the stay of imposition is the first to sentence a defendant and that "[defendant] could not have known the duration of his sentence before the stay of imposition was vacated . . .").

To rebut this argument in its original brief, the Government cited *Escoto-Castillo v. Napolitano*, 658 F.3d 864 (8th Cir. 2011), which addressed a stayed Minnesota sentence in the context of an immigration case. However, *Escoto-Castillo* is not analogous. First, and most importantly, it dealt with a Minnesota state court that imposed a stay of *execution* of a sentence, not a stay of *imposition* of the sentence. *Id.* at 865. As set forth above, Minnesota law makes a clear distinction between the stayed execution of a sentence and the stayed imposition of a sentence. In the latter situation, "there is *no* sentence of imprisonment." *Stafford*, 368 N.W.2d at 366 (emphasis added). Second, and more importantly, *Escoto-Castillo* did not reach the underlying issue because the court found that the record was not sufficiently developed. 658 F.3d at 866.

Accordingly, it has no precedential value. It is clear that under Minnesota law, Limones-Valles has not been subject to a term of imprisonment.

This does not end the inquiry, however, because the Government argues that the federal statutory language, as interpreted by the Eighth Circuit, does not recognize the distinction adopted by the Minnesota courts. In its original reply brief (Doc. No. 32), the Government cited 8 U.S.C. § 1101(a)(48)(B), which states:

> Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or part.

In explaining this statute, the Eighth Circuit has stated:

> [O]ur Circuit precedent . . . holds that a felony conviction is an aggravated felony within the meaning of U.S.S.G. § 2L1.2 if the defendant received a sentence of at least one year of imprisonment, "even if the sentence is suspended." United States v. Tejeda–Perez, 199 F.3d 981, 982 (8th Cir. 1999). . . As we spelled out in *Tejeda–Perez*, 8 U.S.C. § 1101(a)(48)(B) clarifies § 1101(a)(43)(G) by explaining that "[a]ny reference to a term of imprisonment ... is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment." *Id*. . . (*quoting* 8 U.S.C. § 1101(a)(48)(B)). The "term of imprisonment" for [defendant's] stealing conviction includes, therefore, the four years of incarceration ordered by the Missouri court even though that court suspended the imposition of the incarceration in favor of probation; the stealing conviction consequently falls within the definition of aggravated felony in § 1101(a)(43)(G). That conviction is thus an aggravated felony pursuant to U.S.S.G. § 2L2.1(b)(1)(C), and the District Court therefore properly applied an eight-level increase to Demirbas's base-offense level.

*United States v. Demirbas*, 331 F.3d 582, 584 (8th Cir. 2003). Thus, the Government argues that regardless of whether the Minnesota court stayed execution or imposition of the sentence, Limones-Valles was convicted of a qualifying offense, received a sentence of a year or more, and was therefore subject to expedited removal.

However, Judge Williams found that the federal statutory scheme and the Minnesota state courts do not use the word "imposition" in the same way. The rationale suggested in the R&R, and urged by the defendant, is that the federal statute uses "imposition" as a synonym for execution and, in context, both refer to situations in which a defendant was convicted and sentenced to a term of imprisonment but did not actually serve that imprisonment. Essentially, the difference is between "suspension of imposition of the *sentence*," and "suspension of imposition of the *sentencing*." In support of this conclusion, Judge Williams analyzed the various cases cited by the Government in support of its argument that federal law does not support Limones-Valles' argument:

> The government relies on a number of cases, which I find distinguishable from the present facts. *See generally, United States v. Demirbas*, 331 F.3d 582 (8th Cir. 2003) (court found that a suspended sentence of at least one year imprisonment is an aggravated felony under Section 1101(a)(43)); *United States v. Tejeda-Perez*, 199 F.3d 981(8th Cir. 1999) (court found suspended sentences count for purposes of Section 1101(a)(43) as long as defendant receives a sentence of at least one year); and *United States v Ayala-Gomez*, 255 F.3d 1314 (11th Cir. 2001) (the formally imposed term of imprisonment governs, not the time a court actually orders defendant to serve). These cases were all decided in the context of suspended executions of pronounced sentences. Here, the Minnesota judge spoke only in terms of a "presumed sentence" and then suspended the imposition of any sentence.

Doc. No. 33 at 20. *Demirbas* demonstrates the incongruity in the use of the terms imposed and imposition. The Eighth Circuit stated, "the Missouri court consequently revoked his probation and *imposed* a new sentence of four years of incarceration, although the court suspended the *imposition* of the sentence and ordered five years of probation. This four-year suspended sentence of incarceration is at the heart of Demirbas's appeal." *Demirbas*, 331 F.3d at 583 (emphasis added). Thus, the Missouri court both imposed a sentence and suspended imposition of that sentence. Since

14

something cannot both be and not be, it seems clear that what the Eighth Circuit meant by "imposition" was actually execution; *i.e.,* the sentence was imposed by the Missouri court but the execution of that sentence was suspended such that Demirbas did not serve the time imposed. This is distinct from a stay of imposition under Minnesota law, in which no sentence is rendered.

Judge Williams also discussed *United States v. Renteria-Aguilar*, No. 15cr2399, 2016 WL 2931117 (S.D. Cal. May 19, 2016) (appeal pending), a case that addressed a similar situation. The court found that the defendant's sentence had been imposed but suspended and that he therefore qualified for removal:

> Defendant argues that § 1101(a)(48)(B) does not apply in this case because her sentence was "stayed" as opposed to "suspended." However, the Court believes that the terms are interchangeable and that Defendant's sentence was "suspended" within the meaning of § 1101(a)(48)(B). The abstract of judgment states, "IT IS ORDERED that imposition of sentence be suspended" for three years. (Def. Ex. B.) Defendant argues that the abstract also includes a checked box indicating that the sentence is "stayed." However, the form actually states that "custody is stayed" until successful completion of probation. (Emphasis added.) Thus, it appears that imposition of Defendant's sentence was in fact "suspended." At any rate, the Court does not believe there is any significant difference between a "stay" and "suspension." The second definition for "stay" in Black's Law Dictionary (10th ed. 2014) is "An order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding."

2016 WL 2931117, at *2. Thus, the court held that stayed and suspended had the same meaning, such that the sentence had been imposed but the execution of that sentence was forestalled. Again, the key distinction is that imposed and executed are not interchangeable under the applicable Minnesota law. Rather, a stay of imposition means no sentence is imposed.

That distinction has been recognized by other federal courts. *United States v. Guzman-Bera*, 216 F.3d 1019 (11th Cir. 2000), dealt with an immigrant who had

previously been deported. He was convicted of illegal reentry and received a sentence enhancement because of his status as an aggravated felon. On appeal, he challenged whether he met the criteria as an aggravated felon. The Eleventh Circuit found that he did not:

> We follow . . . *United States v. Graham*, 169 F.3d 787 (3rd Cir. [1999]) . . . in holding that the statute means the sentence actually imposed. The Third Circuit is the only United States Court of Appeals found to have directly decided whether 8 U.S.C. § 1101(a)(43)(G) refers to the sentence authorized or the sentence imposed. The Court reasoned that, although a crucial verb was omitted, there was no evidence that Congress intended to depart from its prior position that an aggravated felony is determined by the imposed imprisonment. *Graham*, 169 F.3d at 790. Before its amendment in 1996, the statute defined aggravated felony as "a theft offense ... for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years." *Graham*, 169 F.3d at 790. The court concluded that when Congress amended the statute it did not intend to change the sentence imposition requirement, but, instead, simply lowered the penalty required to make a theft violation an aggravated felony from five years to one year. 169 F.3d at 791. We agree with the Third Circuit. . . The question then becomes: what sentence was actually imposed in this case? The district court considered the sentence imposed to be the 18-month sentence Guzman-Bera received in 1998 based on his probation violation because it "has a direct relationship to" the original sentence he received in 1995. At the time of his deportation and reentry, however, the conviction was not one for which a prison sentence had been imposed. If he had received a prison sentence which was suspended and followed by probation the enhancement might be applicable. A reference to a term of imprisonment is deemed to include the period of incarceration regardless of any suspension of either the imposition or execution of that sentence. 8 U.S.C. § 1101(a)(48)(B). *See also United States v. Tejeda-Perez*, 199 F.3d 981, 982 (8th Cir. 1999) . . . We need not decide that point, however, because in this case Guzman-Bera did not receive a suspended sentence. Although the state court judgment from the 1995 conviction is not included in the record, both defendant and the government represented at oral argument that defendant was sentenced to straight probation without reference to a suspended sentence. On this issue we follow the reasoning of the United States Court of Appeals for the Fifth

Circuit and hold that "when a court does not order a period of incarceration and then suspend it, but instead imposes probation directly, the conviction is not an 'aggravated felony.'" *United States v. Banda-Zamora*, 178 F.3d 728, 730 (5th Cir. 1999).

*Guzman-Bera*, 216 F.3d at 1020–21. Judge Williams found the analysis of what constitutes an "aggravated felony" in *Guzman-Bera* to be persuasive and concluded that Limones-Valles' situation is similar. Specifically, Limones-Valles was never sentenced to a year or more in prison. The Minnesota court suspended the imposition of any sentence of imprisonment and instead sentenced Limones-Valles to probation, with the *possibility* of a prison sentence only if he violated his probation.

I agree and find that the suspension of the imposition of sentence as used by the Minnesota courts is different from the imposition of sentence as used in 8 U.S.C. § 1101(a)(48)(B). The former means no sentence is given, whereas the latter means a sentence is given but not carried out.[6] Thus, at this initial stage of the inquiry, I find that Limones-Valles was not sentenced to a term of imprisonment and, therefore, was not an aggravated felon at the time of his 2001 removal.

### 2.      Was Limones-Valles Eligible for Voluntary Removal in 2001?

The Government also challenges whether Limones-Valles can show prejudice such that he can make a valid due process claim. The Government's argument is two-fold. The first part of the Government's argument, which was considered and rejected by Judge Williams, is that "even if immigration authorities [im]properly classified defendant as an

---

[6] I note that the language of the Minnesota court's judgment against Limones-Valles is consistent with Minnesota's distinction between staying the imposition of a sentence and staying the execution of a sentence. The judgment states that "the presumed sentence is a stay of twelve months and one day." Doc. No. 12-3 at 2 (emphasis added). At no point does the judgment adopt this "presumed" sentence. Instead, the judgment goes on to state that the "imposition of sentence" is being stayed pending certain conditions. *Id.*

aggravated felon, defendant cannot show actual prejudice as defendant has no protected interest in discretionary relief from removal, namely voluntary departure." Doc. No. 33 at 22. The second part, raised for the first time in the Government's objection, is that Limones-Valles would not have been eligible for voluntary removal because he did not have the requisite good moral character.

The Eighth Circuit has stated that to "demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice. . . Actual prejudice results where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." *Lopez v. Heinauer*, 332 F.3d 507, 512–13 (8th Cir. 2003) (internal citation omitted). Regarding the first argument, the Government cites numerous cases for the proposition that when an immigrant defendant:

> is seeking the discretionary relief . . . there is no constitutionally-protected liberty interest at stake. *Guerra–Soto v. Ashcroft*, 397 F.3d 637, 641 (8th Cir. 2005) (noting that where a lawyer's "ineffectiveness only touches upon the alien's chance to seek discretionary relief, the ineffectiveness does not result in a violation of due process rights").

*Jamieson v. Gonzales*, 424 F.3d 765, 768 (8th Cir. 2005). Judge Williams distinguished the "discretionary relief" cases cited by the Government:

> In each of these cases, the defendants had at least a removal hearing before an IJ, and appealed to federal court. Here, defendant never got even half that far. His alleged due process violation is more severe. The issue in this case is not whether the IJ should have explained to him the differences between pre-conclusional voluntary departure or post-conclusional voluntary departure (see *Garcia-Mateo*), but rather whether defendant was entitled to a removal hearing before an IJ.

Doc. No. 22 at 23. Essentially, Judge Williams found that the alleged due process violations in the cases cited by the Government occurred in a different context from the one at issue here. The "discretionary relief" cases cited by the Government considered

whether the alien's hearing comported with due process and found that due process was not violated when the alien did not receive a desired discretionary outcome. The question in this case is whether Limones-Valles was denied due process by being removed without a hearing. Put more simply, Limones-Valles does not contend that his due process rights were violated because he did not receive a discretionary outcome. Instead, he alleges that his rights were violated because he was not given an opportunity to be heard.

This distinction has been noted by other district courts. *United States v. Reyes*, 907 F. Supp. 2d 1068 (N.D. Cal. 2012), similarly dealt with a defendant who was deported without a hearing after officials determined he was convicted of an aggravated felony. The court stated:

> [I]f an individual is not a lawful permanent resident and is guilty of an aggravated felony, he is subject to an expedited administrative process and is not afforded a removal hearing before an IJ and is not eligible for voluntary departure. 8 U.S.C. § 1228(b)(5). Here, Defendant's predicate offense was determined to be an aggravated felony by an Immigration Enforcement Official. Mot. at 3. That finding subjected Defendant to expedited removal without a hearing before an IJ, and he thus was not informed of any potential for eligibility for relief from removal. *Id.*

*Id.* at 1072. The court continued:

> An erroneous determination that his predicate offense was an aggravated felony would constitute a "defect[] in his underlying deportation proceeding" (*Ubaldo–Figueroa*, 364 F.3d at 1048) and a due process rights violation. Accordingly, this Court turns to the pivotal question whether Defendant's underlying conviction is an aggravated felony as defined in the Immigration and Nationality Act.

*Id.* After analyzing the California offense at issue, the court concluded:

> Defendant was [] not convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), and his expedited removal and the denial of a hearing before an IJ (and the rights and advisement he should have received) was

19

> in error. The failure to provide Defendant an opportunity to be heard by
> an IJ and to be informed of his eligibility for voluntary departure denied
> him his due process rights. The first prong of the "fundamental"
> unfairness test under *United States v. Ortiz–Lopez, supra*, is thus satisfied.

*Id.* at 1077. The court then considered the prejudice prong and found that the defendant

would have been both eligible to receive voluntary departure from an immigration judge

and that he likely would have been granted voluntary departure. Accordingly, "the

Court therefore finds that Defendant had a 'plausible ground for relief from deportation,'

(*Ubaldo–Figueroa*, 364 F.3d at 1050) and was prejudiced by the defects underlying his

deportation proceedings." *Id.* at 1079.

The analysis here is similar. There is no doubt that if Limones-Valles was

challenging the outcome of an immigration hearing and was arguing only that a defect

denied him discretionary relief, his due process claim would fail. However, that is not

the issue here. I find that I must consider whether Limones-Valles was eligible for

voluntary departure because the alleged due process violation is not the denial of a

particular type of discretionary relief after a hearing, but the denial of the hearing where

relief may have been available.

The second (and apparently just discovered) part of the Government's argument is

that Limones-Valles would not have been eligible for voluntary removal because he does

not have the requisite good moral character. Under 8 U.S.C.A. § 1229c(b)(1) –

(b)(1)(B), "[t]he Attorney General may permit an alien voluntarily to depart the United

States at the alien's own expense if, at the conclusion of a proceeding under section 1229a

of this title, the immigration judge enters an order granting voluntary departure in lieu of

removal and finds that . . . the alien is, and has been, a person of good moral character

for at least 5 years immediately preceding the alien's application for voluntary

departure." As set out in the Government's objection:

A person does not have good moral character if he is described in 8 U.S.C.

§ 1182(a)(2), subparagraphs A and B. 8 U.S.C. § 1101(f)(3). 8 U.S.C. § 1182(a)(2)(A)(i)(I) uses the term "crime involving moral turpitude." "Crimes involving the intent to deceive or defraud are generally considered to involve moral turpitude. ... And because fraud may be inferred from conduct, the likely effect of which would be to mislead or conceal, courts have held that intentionally concealing criminal behavior involved moral turpitude." *Villatoro v. Holder*, 760 F.3d 872, 878 (8th Cir. 2014) (conviction for tampering with records under Iowa law was a crime involving moral turpitude which rendered defendant statutorily ineligible for cancellation of removal) (quotations and citations omitted); *see Lateef v. Department of Homeland Security*, 592 F.3d 926, 929 (8th Cir. 2010) (conviction for using an unlawfully obtained social security number was a crime involving moral turpitude) (citations omitted).

Doc. No. 44 at 10.

Limones-Valles does not contest the Government's assertion that good moral character can be a requirement for voluntary departure. Nor does Limones-Valles dispute the definition of "good moral character" set forward by the Government. Rather, Limones-Valles argues that the good moral character requirement would not have applied to the voluntary removal he would have sought. Specifically:

The government's argument is flawed because not all aliens seeking a voluntary departure need to satisfy the "good moral character" requirement of 8 U.S.C. § 1229c(b)(1)(B). That provision applies only to alien's [sic] seeking a voluntary departure at the conclusion of removal proceedings, *see* 8 U.S.C. § 1229c(b), and the government overlooks the fact that Mr. Limones-Valles could have requested a voluntary departure before the conclusion of such proceedings. *See* 8 U.S.C. § 1229c(a). "The immigration laws distinguish between a grant of voluntary departure at two different stages of removal proceedings." *Alvarado v. Attorney General*, 610 F.3d 1311, 1314 (11th Cir. 2010). An alien need not show "good moral character" to attain a pre-conclusion voluntary departure. *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 816 (BIA 1999) ("[N]either the [Immigration and Nationality] Act nor the regulations require that the alien show good moral character under [8 U.S.C. § 1229c(a)], although the alien must merit a favorable exercise of discretion.").

Accordingly, Mr. Limones-Valles's aggravated forgery conviction would not have barred him from a voluntary departure in 2001.

Doc. No. 47 at 2-3.

There is an important distinction between 8 U.S.C. §§ 1229c(a) and 1229(c)(b). The former is a broad provision that gives the Attorney General power to grant voluntary removal, absent a few exceptions, prior to the completion of removal proceedings. The latter is narrower, dealing with removal after the completion of immigration proceedings, and imposes numerous restrictions. The clear intent is to make it relatively easy to offer voluntary removal to immigrants who have not been convicted of aggravated felonies prior to the completion of the removal proceedings, but to require additional caution in granting voluntary removal after the completion of proceedings. A recent unpublished case, *United States v. Escalante*, No. 15-50279, 2016 WL 6892765 (9th Cir. Nov. 23, 2016), highlights the difference in the two sections. In that case, the immigrant defendant sought to dismiss an illegal reentry indictment on grounds that she would have been eligible for voluntary removal had her original removal comported with due process. However, she had previously been convicted of a willful injury aggravated felony. The court stated:

> [Defendant] therefore would have been statutorily ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1)(A)–(B) (requiring an applicant to "ha [ve] been a person of good moral character" "for a continuous period of not less than 10 years immediately preceding the date of [ ] application"); 8 U.S.C. § 1101(f)(8) (barring a determination of good moral character for individuals convicted of an aggravated felony). [Defendant] was similarly ineligible for pre-conclusion voluntary departure. *See* 8 C.F.R. § 1240.26(b)(1)(i)(E) (noting that individuals convicted of an aggravated felony are not eligible for voluntary departure); *see also* 8 U.S.C. § 1229c(e) ("The Attorney General may by regulation limit eligibility for voluntary departure under this section for any class or classes of aliens.").

2016 WL 6892765, at *1.

Here, the Government has made a compelling argument that Limones-Valles would have been ineligible for voluntary departure after the conclusion of removal proceedings in 2001 because he admitted to an offense involving moral turpitude. However, I agree with Limones-Valles that if he was not convicted of an aggravated felony (and I have found that he was not), he would have been eligible for voluntary removal before the completion of the removal proceedings pursuant to 8 U.S.C. § 1229c(a). Accordingly, the Government's objection is denied as to this issue.

### 3. Did the 2004 Proceedings "Cure" the 2001 Defects?

The Government notes that the indictment invokes only the 2004 removal and contends that because that removal comported with due process, Limones-Valles cannot "reach back" and use his 2001 removal to challenge the validity of the 2004 removal. The Government further argues that Judge Williams should have applied the three factor test to the 2004 removal, not to the 2001 removal. The Government points out that in 2004, Limones-Valles consented to removal and waived his right to a hearing.

It is true that during the 2004 removal proceedings, Limones-Valles checked a box that, roughly translated, amounted to a waiver of his right to appear before an immigration judge. *See* Doc. No. 22-13. Limones-Valles makes no credible allegation that there were any procedural failures during the 2004 removal. On the other hand, there is no indication that even if Limones-Valles would have requested an immigration hearing, either (1) such a hearing would have occurred or (2) an immigration judge would have had the authority to set aside the prior removal. *See* 8 C.F.R. § 241.8(a), which states, that "[a]n alien who illegally reenters the United States after having been removed, or having departed voluntarily, while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order. The alien has no right to a hearing before an immigration judge in such circumstances."

23

Accordingly, because Limones-Valles had already been removed once, he had no right to a hearing before an immigration judge. Perhaps more importantly, the immigration court would have no authority to grant relief in 2004 even if Limones-Valles attempted to challenge the legitimacy of the 2001 removal:

> [A] finding by INS officers that [applicant] illegally reentered the United States after being deported is sufficient to reinstate his removal order. *See* 8 C.F.R. § 241.8(a) (2003). Furthermore, "[t]he alien has no right to a hearing before an immigration judge" and is entitled only to written notice and an opportunity to "make a written or oral statement contesting the determination." *Id*. § 241.8(a), (b). [Applicant] declined to make a statement contesting the reinstatement of his removal order, but he alleges that § 241(a)(5) violates procedural due process because it denies any opportunity for a hearing prior to reinstatement of a removal order. Although we have previously declined to decide this issue, *see Alvarez–Portillo*, 280 F.3d at 867, we have opined that the "streamlined notice and opportunity to be heard afforded illegal reentrants under 8 C.F.R. § 241.8 seem quite appropriate when the only issues to be determined are those establishing the agency's right to proceed under § 241(a)(5)—the alien's identity, the existence of a prior removal order, and whether the alien has unlawfully reentered." *Id*.[] In order to succeed on a due process claim, an alien must prove that he was actually prejudiced by the lack of process afforded to him. *See United States v. Torres–Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995). Therefore, [defendant] must show that, had there been a hearing, the INS would not have reinstated his removal order. *See id*. ("Actual prejudice exists where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." (citation and internal quotations omitted)). The only claim that [applicant] sought to raise in a hearing was the alleged deficiency of the original removal order. He alleges that he was denied due process in the initial proceedings because he did not receive sufficient notice of the initial removal order and because he received ineffective assistance of counsel. However, the initial order "is not subject to being reopened or reviewed." INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) (2000). *As required by this provision, even if Briones had been granted a hearing, his collateral attack on the original removal order would have been precluded. Given the limited scope of the reinstatement proceedings, [applicant] cannot demonstrate any prejudice resulting from the lack of a hearing.*

*Briones-Sanchez v. Heinauer*, 319 F.3d 324, 327 (8th Cir. 2003) (emphasis added). Thus, any attempt by Limones-Valles in 2004 to challenge his prior removal would have been futile.

Judge Williams relied on *Charleswell*, discussed extensively above, to conclude that it was proper to consider whether the 2001 removal was procedurally deficient. Judge Williams stated:

> Here, as in *Charleswell*, the 2004 removal order was predicated on the 2001 removal order. At the hearing, Agent Pryor, who processed defendant's 2004 removal, testified he consulted the 2001 removal order and from that concluded defendant was an aggravated felon and thus not entitled to a removal hearing before an IJ. *See* Doc. 12-5, at 3 (Warning to Alien Ordered Removed or Deported dated August 5, 2004, the box is checked that defendant is an aggravated felon). Therefore, "where either proceeding— the reinstatement or the original—is so procedurally flawed that it 'effectively eliminated the right of the alien to obtain judicial review,' [this Court] may invalidate the criminal charges stemming therefrom." *Charleswell*, 456 F.3d at 352. Accordingly, I find that I can consider whether defendant's 2001 removal proceeding involved fundamental procedural defects, even though the government has not specifically cited that removal as the basis for its charge. Further, I find that if defendant's 2001 removal proceeding involved fundamental procedural defects, his 2004 removal proceeding could not remove the effect of that defect even if that proceeding did not suffer from fundamental procedural defects.

Doc. No. 33 at 13-14. I agree. The alleged procedural defects in this case occurred during the 2001 hearing. Limones-Valles had no non-futile means of attacking those defects during the 2004 removal. Thus, the 2004 removal did not cure the 2001 defects. Accordingly, under 8 U.S.C. § 1326(d), it is proper for me to consider the 2001 removal. The Government's objection that Judge Williams erred by not applying the three factor test to the 2004 removal is denied. To evaluate Limones-Valles' arguments, including whether he waived his rights and had an opportunity for meaningful judicial review, I must consider the 2001 removal.

**B.** **_Application of the Section 1326(d) Factors_**

As set out above:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that-- (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "The defendant must meet all three requirements in order to successfully collaterally attack the prior removal order." _Tamayo-Baez_, 820 F.3d at 313.

> "An error cannot render the proceedings fundamentally unfair unless it resulted in actual prejudice. . ." "Prejudice in this context means 'a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'"

_Avila_, 522 F. App'x at 371. I will consider these factors in turn.

**1.** **_Exhaustion of Administrative Remedies and Opportunity for Judicial Review_**

Limones-Valles argues that during the 2001 proceedings, he was not advised of his right to contest the proceedings in Spanish, his dominant language. Accordingly, he argues, he had no real opportunity to either exercise or waive any available administrative remedies. In a similar case applying section 1326(d), Chief United States District Judge Linda Reade stated:

> The court agrees with Defendant that _if_ Defendant was not advised of his rights in Spanish, he could not be found to have validly waived his right to contest his 2004 removal because such a waiver would not be voluntary and intelligent. _See Richardson v. United States_, 558 F.3d 216, 219–20 (3d Cir. 2009).

*United States v. Tamayo-Baez*, No. 14-CR-3055-LRR, 2015 WL 926066, at *3 (N.D. Iowa Mar. 4, 2015) (emphasis in original), *aff'd*, 820 F.3d 308 (8th Cir. 2016). Thus, the issue is whether Limones-Valles was informed of his rights in Spanish.[7]

A person facing removal who does not respond to a notice of intent to issue a final administrative removal order fails to exhaust his or her administrative remedies.[8] *Gonzalez v. Chertoff*, 454 F.3d 813, 816 (8th Cir. 2006) (holding a defendant failed to exhaust administrative remedies when he did not respond to the notice). However, the exhaustion requirement "must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." *United States v. Ortiz*, 488 F.3d 717, 718 (4th Cir. 2012). Defendant's Exhibit C (Doc. No. 12-4) contains the documents related to the 2001 removal, including the notice of intent. Those documents are only in English. More importantly, a certificate of service (Doc. No. 12-4 at 6) includes a space to indicate which language was used to communicate with the defendant. The certificate is signed but the space concerning the language of communication is blank.

Steven Pryor, a Homeland Security agent, testified that he was the agent responsible for the 2004 removal. Understandably, he had no independent recollection of Limones-Valles's specific situation. However, based on his review of the relevant materials, he was able to describe the manner of Limones-Valles' 2004 removal and testified that the removal comported with all procedural requirements, including communicating with Limones-Valles in Spanish. *See* Doc. No. 48 at 30-33. Pryor

---

[7] There is no dispute that Limones-Valles' first language is Spanish and that at the time of his 2001 removal he had little ability to speak English. Similarly, the parties do not dispute that Limones-Valles checked boxes and signed various forms to assent to his removal. *See* Doc. No. 12-4. The question is whether those marks and signatures could be knowing and voluntary waivers if Limones-Valles did not understand the forms.

[8] The Notice of Intent is one of the required forms used during an expedited removal. *See* Doc. No. 12-4 at 1.

stated that in a subsequent removal situation, such as Limones-Valles's removal in 2004, agents do not review the technical aspects of the alien's prior removal. *Id*. at 31. He also confirmed that based on the 2001 removal, there was no relief available to Limones-Valles in 2004. *Id*., at 34-35.

Ron Bastyr, a retired Border Patrol Agent who handled Limones-Valles' 2001 removal, testified that Limones-Valles was arrested during the immediate aftermath of the 9/11 terrorist attacks. Bastyr explained that his job was extremely demanding during this period of time and that he worked for months without taking time off. Doc. No. 48 at 58-60. He also testified that the expedited removal program for aggravated felons began during that same year. *Id*. at 60.

Bastyr had no independent recollection of Limones-Valles. However, he testified that it was his practice to discuss the various forms (such as Defendant's Exhibit C) with Spanish-speaking aliens in Spanish. He stated: "I would translate it to them, not word for word, but I would summarize what the form said." *Id*. at 70, 86-87. He also testified that he clarified issues only "if [the alien] asked [him] to." *Id*. When asked if aliens ever took advantage of the fourteen days allowed for appeal, he testified: "You just explain to them what the allegations are and that he's going to be removed to Mexico, and then you ask him if he wants to -- wants to remain in cus[tody] -- remain in jail for 14 days to ask for an extension for the final order removal. And in my career I never had an alien ever ask to -- for an extension, ever." *Id*. at 77.

With regard to a section of a form stating that the alien could respond to or challenge the charges, Bastyr was asked to whom that response would be made. He Bastyr responded, "I'm not sure. I've never had anybody respond." *Id*. at 98. Similarly, when asked about a petition for review, Bastyr stated he did not know anything about it because "I've never had it happen." *Id*. at 99.

Nick Schmidt, another retired Border Patrol Agent involved with Limones-Valles'

2001 removal, testified that his role was largely administrative, overseeing Bastyr's work. Doc. No. 48 at 129. He stated he probably would have been present when Limones-Valles signed the forms. When asked whether the forms were read to Limones-Valles in English he stated that "if he spoke English, it might have happened, but if he didn't speak English, it would have been given in Spanish." *Id*. at 134.

Limones-Valles testified on his own behalf. As Judge Williams noted, his testimony lacked credibility as to certain issues. For example, Limones-Valles had numerous memory gaps and his testimony that he was not informed of his rights in Spanish in 2004 contradicts the documentary evidence (Doc. No. 22-13). However, he did testify consistently that he did not recall anyone speaking to him in Spanish during the 2001 removal process. Doc. No. 48 at 150. He further testified that *if* he was advised of his rights, he did not understand them because they were not given in Spanish. *Id*.

Based on the forgoing, Limones-Valles has met his burden of showing his waiver and consent to removal in 2001 was neither knowing nor voluntary. Although his credibility is limited, Limones-Valles maintained that he was not told of his rights in Spanish. Far more importantly, the relevant document (Doc. No. 12-4) regarding the 2001 removal is blank and does not indicate what language was used to communicate with Limones-Valles. Finally, and most importantly, Bastyr admitted that even when he spoke to aliens in Spanish he did not provide direct translations of any documents. Rather, he summarized what he felt was important. Thus, the record contains no evidence establishing that Limones-Valles was informed in Spanish of his rights or of the nature of the proceedings in 2001. Accordingly, his signed consent to the 2001 removal was not valid and Limones-Valles is excused from his failure to exhaust the available administrative remedies.

The same procedural defect also deprived him of judicial review. Specifically,

because Limones-Valles was not informed of his rights in Spanish during the 2001 removal, he had no meaningful opportunity to challenge the removal.[9]  A recent Fourth Circuit decision, *United States v. Lopez–Collazo*, 824 F.3d 453 (4th Cir. 2016), illustrates this.  In that case, an alien charged with illegal reentry argued that his previous expedited removal as an aggravated felon violated due process because he was not advised of his rights in Spanish.  *Id*. at 459.  The court stated:

> Once the district court determined that the waiver was invalid, it concluded in turn that Lopez–Collazo was excused from having to show that he had exhausted his administrative remedies and that he had been deprived of judicial review, following an approach embraced by some appellate courts. *See, e.g., United States v. Reyes–Bonilla*, 671 F.3d 1036, 1045 (9th Cir. 2012); *United States v. Sosa*, 387 F.3d 131, 136–38 (2d Cir. 2004).  The government does not contest the district court's ruling that the waiver was invalid or that the "invalid waiver excuses his burden to show that he exhausted available administrative remedies" and "suffices to show that the deportation proceedings improperly deprived him of the opportunity for judicial review."  [*United States v.*] *Lopez–Collazo*, 105 F. Supp. 3d [497, 513 (D. Md. 2015)].  Accordingly, for purposes of this appeal, the first two requirements of § 1326(d) were satisfied by Lopez–Collazo, and we focus solely on the final requirement for collaterally attacking an order of removal under § 1326(d): that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3).

*Lopez–Collazo*, 824 F.3d at 459.  In *Sosa*, the Second Circuit considered the same factors and stated:

> [T]he exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal.  Otherwise, Section 1326(d) would violate *Mendoza-Lopez* by prohibiting collateral attacks of deportation proceedings that were fundamentally unfair because they denied the alien an opportunity for judicial review.  Of course, an invalid waiver of the right to administrative

---

[9] Additionally, Bastyr's testimony that he translated only a summary of what was happening to aliens, that he told aliens that responding to the notice of intent would simply result in additional time in custody and that no alien ever challenged the removal, lends additional credence to Limones-Valles' contention that he was not given a meaningful opportunity for judicial review.

> exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid. This was the case in Mendoza-Lopez itself, for example. There, the Court focused on the aliens' uninformed waivers of their rights to judicial review, but their misunderstanding as to the availability of Section 212(c) relief necessarily caused their waivers of administrative remedies to be invalid as well. *Mendoza-Lopez*, 481 U.S. at 840, 107 S. Ct. 2148.

*Sosa*, 387 F.3d at 136. The failure to inform Limones-Valles in Spanish of his rights and of the nature of proceedings in 2001 necessarily interfered with his ability to seek judicial review. Accordingly, Limones-Valles has satisfied the first two factors in challenging the validity of the 2001 deportation order under 8 U.S.C. § 1326(d).

### 2. *Fundamental Unfairness and Prejudice*

The test for the third factor is whether the removal proceedings violated due process and resulted in prejudice. "To demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice." *Lopez*, 332 F.3d at 512. As discussed above, I find that Limones-Valles was not convicted of an aggravated felony. The contrary and incorrect determination by immigration authorities was a fundamental procedural error that set Limones-Valles on the path to an expedited removal for which he did not qualify. Accordingly, his expedited removal was fundamentally unfair and violated due process.[10] *See United States v. Roman-Villalobos*, No. CR 15-00084, 2016 WL 6518481, at *4 (C.D. Cal. Apr. 1, 2016) (defendant's removal was fundamentally unfair when the predicate offence

---

[10] Limones-Valles also has a persuasive, alternative due process argument based on the failure to inform him of his rights in Spanish. "Failure to inform an alien of his or her apparent eligibility for relief from removal is a 'denial of due process that invalidates the underlying deportation proceeding.' *Ubaldo-Figueroa*, 364 F.3d at 1050." *United States v. Ramirez-Gonzalez*, No. 5:14-cr-00407, 2016 WL 3670045, at *6 (N.D. Cal. 2016); *see also United States v. Segundo*, No. 4:10–cr–0397, 2010 WL 4791280, at *9 (S.D. Tex. Nov. 16, 2010).

was not a qualifying aggravated felony); *see also Reyes*, 907 F. Supp. 2d at 1077 ("Defendant was therefore not convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), and his expedited removal and the denial of a hearing before an IJ (and the rights and advisement he should have received) was in error. The failure to provide Defendant an opportunity to be heard by an IJ and to be informed of his eligibility for voluntary departure denied him his due process rights. The first prong of the "fundamental" unfairness test under *United States v. Ortiz–Lopez, supra*, is thus satisfied.").

The next question is whether Limones-Valles can show prejudice. To prove that an error made the proceedings fundamentally unfair, a defendant must show that the error resulted in actual prejudice. *Rodriguez*, 420 F.3d at 834. Actual prejudice means that the defects in the deportation proceedings may have a caused a deportation that would not otherwise have occurred. *Rodriguez*, 420 F.3d at 834. The defendant must show a reasonable likelihood that but for the procedural defect/due process violation, the defendant would not have been deported. *Mendez-Morales*, 384 F.3d at 932. In addressing the prejudice issue, Judge Williams stated:

> Defendant argues that he would have "satisfied the statutory requirements for voluntary departure because (1) he did not have an aggravated felony or terrorism-related conviction, and (2) he was not previously granted a voluntary departure, and (3) he could pay for his travel to his home country . . . . From there, an immigration judge likely would have exercised discretion to grant a voluntary departure because (1) his criminal history was limited to his 2001 aggravated forgery conviction . . . (2) he arrived to the United States at age 14 and lived continuously in this country for more than five years before his removal . . . (3) he had a respectable work history, paid taxes, and supported his family . . . and (4) he had numerous family members in the United States . . . ." Doc. 31, at 2-3 (defendant's second supplemental brief) (citing 8 U.S.C. § 1229c). Defendant had never been granted voluntary departure before. I find there is a "reasonable likelihood" that an IJ would have granted voluntary departure in 2001 had immigration authorities not erroneously labeled defendant an

aggravated felon. As voluntary departure is not a formal order of removal, defendant's proceeding in 2004 would have been different as well. He would have at least had the opportunity to be heard by an IJ in 2004. Thus, I find defendant suffered actual prejudice by the errors in his 2001 and 2004 removal order.

Doc. No. 33 at 24-25.

The Supreme Court has explained voluntary departure as follows:

Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly. Between 1927 and 2005, over 42 million aliens were granted voluntary departure; almost 13 million of those departures occurred between 1996 and 2005 alone. *See Dept. of Homeland Security, Aliens Expelled: Fiscal Years 1892 to 2005*, Table 38 (2005), online at http://www.dhs.gov/ximgtn/statistics/publications/YrBk05En.shtm (all Internet materials as visited June 13, 2008, and available in Clerk of Court's case file).

*Dada v. Mukasey*, 554 U.S. 1, 8 (2008). Voluntary removal is granted at the discretion of an immigration judge under guidance from a variety of regulations and code sections. *See* 8 C.F.R. § 1240.26, 8 U.S.C. § 1229c, 8 C.F.R. § 240.25. As the *Reyes* court noted:

To demonstrate threshold eligibility for voluntary departure, an individual must meet the elements listed in § 1229c(a)(1): that he has not been found removable because of a conviction for an aggravated felony or a terrorism-related crime, that he was not previously granted voluntary departure under 8 U.S.C. § 1182(a)(6)(A), and that he be able to pay his passage home.

*Reyes*, 907 F. Supp. 2d at 1078. The Ninth Circuit recently discussed the additional discretionary factors considered during an immigration proceeding:

The factors relevant to an IJ deciding whether to grant voluntary departure are the alien's negative and positive equities. *See Matter of Gamboa*, 14 I. & N. Dec. 244, 248 (BIA 1972); *see also Rojas–Pedroza*, 716 F.3d at 1264–65. The negative equities include "the nature and underlying circumstances of the deportation ground at issue; additional violations of

33

the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident." *Matter of Arguelles–Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999). The positive equities "are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs." *Id*.

*United States v. Valdez-Novoa*, 780 F.3d 906, 917 (9th Cir. 2015).[11]

Judge Williams referenced Limones-Valles' many "positive equities." For example, he noted that Limones-Valles had a family, had come to the United States at a young age, had a work history, paid taxes, owned a home and had committed no criminal offenses other those related to his illegal status. Doc. No. 33 at 24-25. Additionally, Judge Williams noted that Limones-Valles could pay for his own travel and had not previously been granted voluntary departure. The only argument that Limones-Valles would not have been granted voluntary departure is that his Minnesota conviction demonstrated moral turpitude. As discussed above, however, this argument does not apply if voluntary removal is requested prior to the conclusion of immigration proceedings. *See* 8 U.S.C. § 1229c(a).

Apart from the Minnesota conviction, there are no "negative equities" that may have foreclosed Limones-Valles' voluntary departure. I agree with Judge Williams that it is far more likely than not that he would have been granted voluntary departure if he would have requested such relief. Thus, Limones-Valles suffered actual prejudice as a result of the fundamental procedural defects that occurred in 2001. Not only was he improperly classified as an aggravated felon, and thus subjected to expedited removal, but he was not informed in Spanish of his rights or of the nature of the proceedings. As a result, he was deprived of the opportunity to request an immigration hearing through

---

[11] The Eighth Circuit does not appear to have discussed the discretionary voluntary removal factors. However, the court has cited favorably to the cases underlying the *Valdez-Novoa* decision. *See Garcia-Aguillon v. Mukasey*, 524 F.3d 848, 850 (8th Cir. 2008).

which he likely would have been granted voluntary removal. Had he been granted voluntary removal in 2001, he would not have been subject to the expedited removal in 2004 upon which his present illegal reentry charge is premised. Accordingly, Limones-Valles has satisfied all three factors set forth in 8 U.S.C. § 1326(d). This requires dismissal of the illegal reentry charge against him.

## VII. CONCLUSION

For the foregoing reasons:

1.    The Government's objection (Doc. No. 44) to the Report and Recommendation (Doc. No. 33) of United States Magistrate Judge C.J. Williams is **overruled**.

2.    The Report and Recommendation (Doc. No. 33) is **accepted**.

3.    Defendant's motion to dismiss the indictment (Doc. No. 12) is **granted,** and this case is hereby **dismissed with prejudice**.

4.    The Clerk shall place Document No. 32-1 under seal.

**IT IS SO ORDERED.**

**DATED** this 30th day of December, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE